UNITED STATES of America,
Appellant,

v.

Bernhard FEIN, Appellee.

No. 1121, Docket 74–1446.

United States Court of Appeals,
Second Circuit.

Argued July 18, 1974.

Decided Oct. 15, 1974.

Paul B. Bergman, Asst. U. S. Atty. (Edward John Boyd, V, U. S. Atty., for E.D.N.Y., Raymond J. Dearie, Ronald E. DePetris, Asst. U. S. Attys., of counsel), for appellant.

Victor Rabinowitz, New York City (Rabinowitz, Boudin & Standard, New York City, Michael Krinsky, New York City, of counsel), for appellee.

Before MULLIGAN and WINTER*, Circuit Judges and NEWMAN **, District Judge.

MULLIGAN, Circuit Judge:

On March 17, 1971, by order of District Judge George Rosling, a grand jury was convened in the United States Dis-

---

* Of the United States Circuit Court of Appeals, Fourth Circuit, sitting by designation.

** Of the United States District Court, District of Connecticut, sitting by designation.

trict Court for the Eastern District of New York. Judge Rosling's order directed that "pursuant to Rule 6(a) and (g), Federal Rules of Criminal Procedure, a Special Grand Jury be convened . . . to serve for a period not to exceed eighteen (18) months from the date it is convened . . . ." On or about August 30, 1972, in the 18th month of the grand jury's life, the Assistant United States Attorney for the Eastern District who was supervising the grand jury's investigation orally applied to Chief Judge Jacob Mishler for an extension of the term of the grand jury. On August 30, Judge Mishler signed an order submitted to him by the Assistant extending the term of the grand jury for an additional six months upon the authority of 18 U.S.C. § 3331.

On September 26, 1972, nine days after the expiration of the original 18-month life of the grand jury, the jury returned a two-count indictment against the appellee, Bernhard Fein, charging him with the corrupt receipt of a bribe in violation of 18 U.S.C. § 201(c)(1), and with making a false declaration before a federal grand jury in violation of 18 U.S.C. § 1623. The second count charged that Fein made a false declaration before the grand jury on September 19, two days after the life of the grand jury would have expired pursuant to Judge Rosling's initial order. Other indictments involving other individuals were subsequently returned. Following a second oral application by the Government, Chief Judge Mishler, on February

2, 1973, ordered the term of the March 17, 1971 grand jury extended to September 17, 1973 for the purpose of completing the investigation. This order was also made by authority of 18 U.S.C. § 3331. The grand jury was finally dissolved on September 17, 1973.

On December 20, 1973, appellee Fein moved for an order pursuant to Fed.R. Crim.P. 12 dismissing the indictment on the ground that the indictment had been returned after the lawful life of the grand jury had expired and was therefore invalid. Fein contended that the grand jury was convened pursuant to Rule 6(g), which provides that a "grand jury shall serve until discharged by the court but no grand jury may serve more than 18 months." Since the indictment against him had been returned after the 18-month period had expired, Fein argued that the grand jury did not have the authority to indict him. Fein further urged that the extensions made by Chief Judge Mishler under 18 U.S.C. § 3331 were ineffective since that section applies only to organized crime grand juries and not grand juries convened pursuant to Rule 6, which does not provide for any extensions. In a memorandum and order dated January 29, 1974, Judge John F. Dooling, Jr., dismissed the indictment upon the grounds urged by Fein. 370 F.Supp. 466 (E.D.N.Y.). A motion for reargument was denied on February 13, 1974.[1] The Government appealed pursuant to 18 U.S.C. § 3731.

We affirm.

---

[1]. During the second extension of the grand jury, it returned an indictment in the case of United States v. McDonnell and Fetell, 73 Cr. 562 (E.D.N.Y.). Thereafter and prior to the motion by Fein, Fetell moved for dismissal of the indictment on the same ground later urged by Fein. The motion was argued at a hearing before Judge Jack B. Weinstein, who denied it at the conclusion of the hearing. In his opinion below, Judge Dooling correctly characterized Judge Weinstein's ruling as "provisional" and declined to follow it because he had been presented with the complete legislative history relevant

to the matter, which Judge Weinstein had not seen at the time of the hearing on Fetell's motion. 370 F.Supp. at 467. The Fetell motion never resulted in a final decision by Judge Weinstein since the prosecution was otherwise terminated.

Apparently, there are now outstanding ten indictments which were handed up by the same jury which indicted appellee, which arose out of the same investigation and which are still subject to a motion to dismiss. In four of these, defendants have moved for the same relief which appellee obtained below.

## I. THE GRAND JURY—CREATURE OF STATUTE OR OF THE COURT?

Since there is no statutory authority for the extension of a Rule 6 grand jury beyond the 18-month period provided therein, the Government has necessarily taken the position that the grand jury is essentially a "creature of the court," that it is, in effect, an arm or adjunct of the district court and that the district court has implied power to extend its term even absent legislative provision. Judge Dooling decided that the grand jury is a "creature of statute" (370 F.Supp. at 467–469), relying on In re Mills, 135 U. S. 263, 10 S.Ct. 762, 34 L.Ed. 107 (1890). In *Mills*, Mr. Justice Harlan, writing for an unanimous Court, stated:

> A grand jury, by which presentments or indictments may be made for offences against the United States is a creature of statute. It cannot be impanelled by a court of the United States by virtue simply of its organization as a judicial tribunal.

135 U.S. at 267, 10 S.Ct. at 763.

The Government, on the other hand, argues that the powers and provenance of a grand jury were correctly described by Chief Justice Marshall in United States v. Hill, 26 Fed.Cas. p. 315 (No. 15,364) (C.C.Va.1809). Sitting as a Circuit Justice, Chief Justice Marshall stated:

> It has been justly observed, that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is, that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But, how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential. Grand juries are accessaries to the criminal jurisdiction of a court, and they have power to act, and are bound to act, so far as they can aid that jurisdiction. Thus far, the power is implied, and is as legitimate as if expressly given.

26 Fed.Cas. at 317.

The language in *Mills* is not necessarily inconsistent with the principle espoused by Mr. Justice Marshall in *Hill*. The *Hill* opinion was written in 1809, long before Congress had enacted any legislation regulating the powers or the tenure of grand juries. Congress had simply given federal courts jurisdiction over crimes committed against the United States, and the fifth amendment precluded any proceeding against an individual for any capital or infamous crime except upon the presentment or indictment of a grand jury. It was in this context that Mr. Justice Marshall, in the absence of any regulatory statute, found that grand juries were, by implication, necessary auxiliaries and accessories in aid of the jurisdiction of the federal courts. But where Congress has since enacted statutes and courts have adopted rules regulating the power of federal courts over grand juries, the exercise of judicial discretion arising by necessary implication is effectively precluded. Therefore, the question before this court requires, not a consideration of the power of the courts over grand juries in a legislative vacuum, but rather a construction of the relevant rules and statutory enactments governing the creation and the life span of the grand jury, an issue not specifically before either the *Mills* or *Hill* courts.[2]

2. The specific question before Chief Justice Marshall in *Hill* was whether or not an order could be made to certify a presentment to the district court. The issue raised in *Mills* was whether the crimes for which the petitioner had been imprisoned were crimes over which a territorial court had exclusive jurisdiction or crimes over which the district court in which the charges had been brought had jurisdiction.

## II. THE HISTORY AND PURPOSE OF RULE 6(g)

 Rule 6(g) provides that no grand jury shall serve more than 18 months. The United States argues that the continuance of the grand jury beyond that period by judicial order, even though not authorized by statute, is a mere technical irregularity which does not prevent the jury from functioning as a de facto grand jury, and does not preclude the return of a true bill. There are a number of cases which hold that technical imperfections or irregularities in grand jury proceedings which are not prejudicial to the defendant do not effect the validity of an indictment. A review of these cases,[3] however, reveals that none involved more than a peripheral departure from statutory procedures. We have found no authority which has upheld the validity of an indictment returned by a grand jury whose life had terminated under the clear language of the governing rule. This defect, it seems to us, goes to the very existence of the grand jury itself and is not one which can be properly characterized as merely formal or accidental. It is therefore fatal to the indictments handed up by the jury. A review of the history of grand jury tenure provisions confirms the position taken below and here affirmed.

Prior to the enactment of a statute by Congress, the life of the grand jury was deemed to end with the term of the court, since all judicial power terminated with the completion of the term. Bronson v. Schulten, 104 U.S. 410, 415, 26 L. Ed. 797 (1881). It was also understood that a jury not impaneled in the term during which the indictment was returned was null and void, United States v. Gale, 109 U.S. 65, 71, 3 S.Ct. 1, 27 L. Ed. 857 (1883), and presumably the indictments returned by such a panel were without effect.

In United States v. Rockefeller, 221 F. 462 (S.D.N.Y.1914), the defendants argued that the indictments returned against them were invalid because the grand jury, impaneled at the September term, sat until the end of the October term. The district court, which held monthly terms, had signed an order extending the life of the grand jury until the end of the October term. Congress, however, had by that point enacted sections 8 and 284 of the Judicial Code. Section 8 provided:

> When the trial or hearing of any cause, civil or criminal, in a district court has been commenced and is in progress before a jury or the court, it shall not be stayed or discontinued by the arrival of the time fixed by law for another session of said court; but the court may proceed therein and bring it to a conclusion in the same manner and with the same effect as if another stated term of the court had not intervened.

Section 284, in pertinent part, provided that the "court may in term order a grand jury to be summoned at such

---

3. E. g., Breese v. United States, 226 U.S. 1, 11, 33 S.Ct. 1, 57 L.Ed. 97 (1912) (indictment voted by grand jury not presented to presiding judge in presence of grand jurors); Agnew v. United States, 165 U.S. 36, 44, 17 S.Ct. 235, 41 L.Ed. 624 (1897) (selection of a group of jurors necessary to complete the grand jury panel made solely from residents of one county); Beatrice Foods Co. v. United States, 312 F.2d 29, 37 (8th Cir.) (Blackmun, J.), cert. denied, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963) (questionnaires sent to prospective grand jurors whose names were obtained by the sponsor system challenged as being insufficient to insure that candidates were qualified); Young v. United States, 94 U.S.App.

D.C. 54, 212 F.2d 236, 238–239 & n. 5, cert. denied, 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137 (1954) (exclusion from list of prospective grand jurors for District of Columbia of all persons who voted outside the District); Nolan v. United States, 163 F.2d 768, 769 (8th Cir. 1947), cert. denied, 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130 (1948) (failure of judge to sign his order directing the summoning of a grand jury); Romney v. United States, 83 U.S.App.D.C. 150, 167 F.2d 521, 527, cert. denied, 334 U.S. 847, 68 S.Ct. 1512, 92 L.Ed. 1771 (1948) (permitting all prospective grand jurors who desired to be excused to be relieved from serving on the jury).

time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so." [4] In *Rockefeller,* the district court upheld the indictment by reason of the extension orders which the two sections, read in conjunction, were construed to authorize. A proceeding before a grand jury had been held to be a "case" or "cause" and thus within section 8. Moreover, the court continued:

> The apparent purpose of this legislation was to provide a way in which a grand jury, with the permission of the court, may complete and conclude any investigation which it has actually commenced. In a district like this one, having monthly terms of court, it must frequently happen that a grand jury will not be able to conclude its work upon a long and complicated case before the expiration of one term and the commencement of another. If, under such circumstances, a grand jury cannot be permitted to finish its labors, there will follow much unnecessary expense, many unfortunate delays, frequent and severe hardships for the accused, and, sometimes, a complete failure of justice. The statute plainly provides a sure and simple means of avoiding these and other serious consequences.

221 F. at 466.

In Elwell v. United States, 275 F. 775 (7th Cir.), cert. denied, 257 U.S. 647, 42

S.Ct. 56, 66 L.Ed. 415 (1921), the appellant Elwell had refused to testify before a grand jury as ordered by the district court; he argued that the term for which the grand jury had been impaneled had expired and therefore the grand jury had ceased to exist. On appeal from a judgment of contempt, the Seventh Circuit stated that the grand jury, convened in December, 1919, was admittedly a legal grand jury during the December term, and that appellant's motion "show[ed] a de facto grand jury on March 15, 1920," the date on which Elwell refused to answer the grand jury's questions. The court, after reciting the relevant portion of section 284 of the Judicial Code, said:

> An order of the District Court entered January 31, 1920, showed unfinished business before the grand jury, and expressly continued its existence to finish business then before it. See United States v. Rockefeller, 221 F. at page 466 . . . . There is some claim that the formal order continuing the jury is not properly shown. In any event the court that originally organized it was treating it as a bona fide grand jury, and it was doing the business ordered by the court.

275 F. at 777–778.[5]

Despite the *Rockefeller* and *Elwell* decisions, the Department of Justice had misgivings that the rather vague language of section 284 was intended to

---

4. The predecessors of section 284 did not impose any time limitations on the tenure of a grand jury. In 1846, Congress altered a previous enactment which permitted a grand jury to be summoned only by order of the court (Act of May 20, 1826, ch. 136, 4 Stat. 188) by adding a provision allowing courts in term to order the impaneling of a grand jury whenever it was considered appropriate to do so. Act of Aug. 8, 1846, ch. 98, § 3, 9 Stat. 72. Section 810 of the Revised Statutes authorized a court to impanel a grand jury "at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so." Revised Statutes § 810, at 151 (2d ed. 1878). The immediate predecessor of section 284 contained the same language as that found in section 810. Act of March 28, 1910, ch. 134, 36 Stat. 267.

5. The Government, while recognizing that *Rockefeller* and *Elwell* relied upon statutory authority to continue the life of the grand jury to another term, nonetheless argues that the Seventh Circuit in *Elwell* found that the statute was merely confirmatory of an implied power which the courts always possessed, and this, the Government contends, explains the court's reference to the "de facto" grand jury. Whatever force this interpretation might have had is destroyed by the later holding of that circuit in United States v. Johnson, 123 F.2d 111, 120 (7th Cir. 1941), wherein the court, referring to *Elwell,* held:

> While we are loath to repudiate a holding of our own court, we are of the view that there is no such thing as a de facto Grand Jury in a Federal Court . . . . A United States District Court . . .

give district judges the power to extend the term of the grand jury. See United States v. Malone, 18 F.Supp. 865 (N.D. Ill.1937), aff'd, 94 F.2d 281 (7th Cir.), cert. denied, 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529 (1938). Accordingly, the Attorney General recommended to Congress that legislation be enacted which would expressly authorize courts to make orders permitting grand juries to continue beyond the term for which they were impaneled.[6] Eventually, in 1931 Congress enacted the bill proposed by the Attorney General, Act of Feb. 25, 1931, ch. 297, 46 Stat. 1417, 28 U.S.C. § 421, which provided in relevant part:

> And said court may in term order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so. And the district judge or the senior district judge, as the case may be, may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term suc-

ceeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury: *Provided, however,* That no grand jury shall be permitted to sit in all during more than three terms.

The legislative history sheds light upon the intentions of Congress in imposing a three-term limit upon the life of the grand jury. Section 421 was enacted to give to district courts an explicit power which the Justice Department did not believe them to have under the prior statute. The courts were granted the power to extend grand juries, but, at the same time, Congress specifically denied this power after three terms of court had expired. Even assuming a prior implied power to extend, it is quite clear that the cut-off fixed by Congress eliminated any possibility of inherent judicial authority to grant further extensions.

This view is confirmed by the subsequent history of the statute. The Department of Justice grew dissatisfied

---

is of limited jurisdiction with such powers only as are expressly conferred. A Grand Jury is a "creature of statute." In re Mills, Petitioner, supra.

The reversal of *Johnson* by the Supreme Court, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943), as we shall develop hereafter, did not affect this position.

**6.** The position of the Department of Justice was explained in a letter from Oliver E. Pagan, Special Assistant to the Attorney General, which was transmitted with the proposed bill to the Chairman of the Senate Judiciary Committee. Mr. Pagan stated therein:

> The first bill proposes to amend section 284 of the Judicial Code by the insertion of a few lines which are indicated in pencil as being new matter. The thing sought to be accomplished by this additional matter is authority for grand juries to hold over the term. In all the large cities, where the trust cases are usually prosecuted, criminal terms last only one month, as a rule, and investigation of trust-law violations can very seldom be completed during one term. Although in one or two districts the practice is followed of "continuing the term" by order of court, every reasonable argument and

analogy would seem to be against the power of a court's extending a term fixed by law, and to call for legislation definitely permitting a grand jury to hold over the term for which it is empaneled. At the common law all business ended with the term. Compare Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797. Section 8 of the Judicial Code permits a petit jury to hold over the term to finish the trial of a case, and there should be similar legislation as to grand juries.

> To construe section 284, as amended a few years ago to permit the convening of a "second" grand jury, so as to permit a grand jury to hold over a term, as was done in United States v. Rockefeller (221 F. 462, 466), permits the convening of an indefinite number of grand juries, each sitting indefinitely so far as time is concerned. Notwithstanding this decision, the department fears to risk any important cases, especially one wherein the statute of limitations will run before the question can be settled by the Supreme Court, by detaining the grand jury beyond the term; and so the decision is of no practical value. All doubts upon this subject should be removed by legislation of some kind in the nature of the bill submitted herewith.

with the fact that the limitation of the life of grand juries was stated by reference to terms of court, which varied from district to district. The Department noted that grand juries often had to abandon investigations because the limitation had been reached, thus requiring re-presentation of evidence to a new grand jury. Since some investigations were being hampered by the shortness of some of the varying terms of court, the Department desired a uniform limitation upon the life of the grand jury. This position was presented to Congress after a grand jury in the Southern District of New York had been forced to abandon an investigation because of the three-term limitation. The grand jury wrote a letter expressing its distaste for the effect the limitation worked on that investigation, and it drafted proposed legislation to permit a court to extend the life of a grand jury without any restriction so as to allow the jury to complete a pending investigation. H.R.Rep. No. 1747, 76th Cong., 3d Sess. 2–4 (1940).

The Justice Department rejected the proposal for the existence of a grand jury limited only by the length of the investigation. Instead, it proposed a uniform 18-month limitation upon the grand jury's life, which the Attorney General deemed sufficient. The Department recognized, however, that if the 18-month period should prove to be insufficient in any particular case, the same result would occur as distressed the New York grand jury. H.R.Rep.No. 1747, *supra*, at 4 (letter of Attorney General Jackson).[7] The Congress declined to follow the New York grand jury's suggestion of no fixed limitation and enacted into law as an amendment to section 421 the 18-month limitation recommended by the Justice Department. Act of April 17, 1940, ch. 101, 54 Stat. 110.

In a number of cases decided after the enactment of 28 U.S.C. § 421, defendants objected to indictments on the ground that they were returned after the expiration of the term of court in which the grand jury was impaneled. In each case, the court disposed of the objection, not by relying upon any implied power, but by reference to the terms of the statute. Stillman v. United States, 177 F.2d 607, 611 n.2 (9th Cir. 1949); United States v. Parker, 103 F. 2d 857, 859–860 (3d Cir.), cert. denied, 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522 (1939); United States v. Foote, 42 F.Supp. 717, 719 (D.Del.1942); United States v. Central Supply Ass'n, 37 F. Supp. 890, 891–892 (N.D.Ohio 1941); United States v. Borden Co., 28 F.Supp. 177, 182 (N.D.Ill.), rev'd in part on other grounds, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939). In United States v. Enoch L. Johnson, No. 384c (D.N.J. June 19, 1941), discussed in United States v. Perlstein, 39 F.Supp. 965, 970 (D.N.J.1941), aff'd, 126 F.2d 789 (3d Cir.) (*en banc*), cert. denied, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942), a grand jury had returned an indictment beyond the term for which it had been extended. The court quashed the indictment because "the grand jury was without power to find the indictment . . . ." under section 421. Section 421 also came before the Supreme Court in an important decision upon which the Government heavily relies, United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943), which we have previously noted. See footnote 5.

In that case, the Seventh Circuit reversed a number of convictions because the indictments had been returned by an invalid grand jury. 123 F.2d 111 (1941). Section 421 allowed a grand jury to be extended into a succeeding term by order of a court, but the jury could only consider during the period of

---

7. The Attorney General suggested that it might be wise for Congress to provide "that a stenographic record of testimony heard by one grand jury may be read in evidence before a subsequent grand jury . . . ." H.R.Rep.No.1747, *supra*, at 4.

the extension matters which it had begun investigating in the initial term; that is, it could not begin new investigations in the continued term. The court construed the order of extension in issue as permitting the initiation during the new term of investigations not begun during the initial term; it therefore held that the indictments were void because the grand jury, improperly extended, was not legally constituted. It based its decision on the proposition that grand juries are creatures of statute and have no existence except that which is given to them by statute.

On appeal, the Supreme Court, by Mr. Justice Frankfurter, rejected the construction which the circuit court had placed upon the order of extension, finding, as had the dissenting judge below, that the language of the order did not authorize the grand jury to commence during the extension investigations not initiated during the original term. 319 U.S. at 508–510, 63 S.Ct. 1233.

The Government argues that *Johnson* only stands for the proposition that grand juries may not be extended to undertake investigations not previously begun, and that the Supreme Court did not conclude that Congress, in imposing limitations upon the life of the grand jury, intended to affect the validity of indictments returned by a jury whose life had

expired. We cannot agree. In our view, the fair reading of the Court's opinion in *Johnson* is that the Court accepted the conclusion of all of the circuit judges below that an indictment returned by a grand jury sitting beyond its legally authorized time is a nullity. This acceptance is reflected throughout the opinion and is also made explicit. Referring to the disputed order of extension of the district court, Justice Frankfurter stated: "This is the order which gives rise to the controversy, *for upon its legality depends the validity of the indictment thereafter returned by the grand jury.*" 319 U.S. at 508, 63 S.Ct. at 1236 (emphasis added). That is, if the extension order was not legal, the grand jury, although it functioned and was treated as a grand jury, was not properly in existence and the indictments returned by it were invalid.[8]

After the *Johnson* case was decided, the Advisory Committee on the Rules of Criminal Procedure presented a preliminary draft of the Rules to the Supreme Court for comment. The Court suggested to the Committee that it consider modifications designed to avoid the complexities, encountered in *Johnson*, of determining what matters an extended grand jury may consider. Orfield, The Federal Grand Jury, 22 F.R.D. 343, 348 (1959). The Committee then drafted

---

8. The Government also relies upon Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1124 (1943), decided only a month before *Johnson*. In *Roche*, a district court had ordered that a grand jury be extended to the following term only to continue investigations initiated but not completed during the critical term. The defendants complained that the inquiry into the offenses charged in the ensuing indictment had only commenced during the extended term of the grand jury. The district court struck the plea of abatement based on this point, and, on a writ of mandamus, the circuit court concluded that, if the defendant could establish this argument at trial, the grand jury indictment was invalid. 130 F.2d 843 (9th Cir. 1942) (*en banc*). The Supreme Court reversed on the ground that mandamus was an improper remedy, since the district court, even if erroneous, did not abuse its judicial power. Appeal would lie from a final judgment, the Court said, and mandamus thwarted the congressional policy against piecemeal appeals. 319 U.S. at 30, 63 S.Ct. 938. The Government relies on language in *Roche* which indicated that the grand jury had been validly extended and that the objection that the subject matter considered was new and not continuing was at most an irregularity, but not a jurisdictional defect. 319 U.S. at 26–27, 63 S.Ct. 938. We see no solace for the Government in *Roche*. There, the extension order was legal and pursuant to the statutory language, even though the grand jury may have exceeded its powers. In *Johnson*, on the other hand, the extension order, as read by the circuit court, did not comply with the statute, the grand jury was therefore not properly extended, and any indictment would have been a nullity.

present Rule 6(g),[9] which abolished limitations referenced to terms of court, as found in the repealed section 421. The abolition of the concomitant restrictions on the matters the grand jury could begin to investigate in an extended term was expressly designed to avoid further difficulties of the type presented in *Johnson*. Notes of the Advisory Committee on the Rules, 18 U.S.C.A. Fed.R. Crim.P. 6, at 235. The Committee did not intend to alter the view that compliance with the statutory time limitations would determine the validity of indictments. Judge Alexander Holtzoff, then Secretary to the Committee, wrote that the restriction placed by section 421 on the activities of the grand jury in an extended term to investigations commenced in the initial term "gives rise to difficult questions in respect to validity of indictments found during an extended period of service of the grand jury . . . . The [new] rule would entirely eliminate controversies of this nature . . . ." Holtzoff, Reform of Federal Criminal Procedure, 12 Geo.Wash.L.Rev. 119, 134–35 (1944).

Recently, Congress has had occasion to reaffirm the view we have taken of its intention with regard to Rule 6(g). In late 1973, the Attorney General sent to the Congress a proposed bill designed to extend the life of the June 5, 1972 grand jury of the District Court for the District of Columbia, the so-called "Watergate" grand jury. The Attorney General, in a letter accompanying the bill, stated that the grand jury under "F.R. Crim.P.Rule 6(g) . . . cannot continue more than 18 months without a statutory extension." He continued:

> The present law does not permit judicial extension of the life of a general grand jury. I recognize that statutory extensions have usually been discouraged, but the present case seems sufficiently extraordinary to require

an exception . . . . Furthermore, analogous extensions for three 6-month periods are permitted under the Organized Crime Control Act of 1970, 18 U.S.C. 3331–3334, when a special grand jury has been empaneled and the usual 18-month period proves insufficient for it to complete its investigation.

H.R.Rep. No. 93–618, 93d Cong., 1st Sess. 3–4 (1973).

Congress enacted the bill, but specified that "[i]n no event shall the term of the grand jury extend beyond December 4, 1974," Act of Nov. 30, 1973, Pub.L. No. 93–172, 87 Stat. 691, on the representation of the Justice Department that its work would be completed by that date.

The Justice Department recognized that the work of the original grand jury would have to come to an end since the 18-month limit was about to be reached and no extensions were possible. Accordingly, it sought the extraordinary remedy of a special statutory extension, and Congress embarked on the cumbersome process necessary to pass a bill in order to extend the life of the grand jury. This effort lends weight to the argument that a grand jury ceases to exist after the 18-month period has expired and that no judicial extensions are possible except by the extraordinary remedy of a special congressional enactment.

In light of the statutory history and the cases construing antecedent legislation, we can only conclude that the Congress, by imposing restrictions on the life of the grand jury, clearly intended that indictments filed thereafter are void. What other purpose could there be in establishing the limitation if the grand jury were to be permitted to continue its business despite its statutorily mandated demise? We assume that Congress determined that laymen from the vicinage, traditionally acting

---

9. Although Rule 6 was drafted by the Committee, which was appointed by the Supreme Court pursuant to the Court's power to prescribe rules of procedure in criminal cases, the Rule could not take effect until it was submitted to Congress and a period of time passed without any adverse action by that body. See 18 U.S.C. § 3771.

as a screening device to protect their fellow citizens from unwarranted criminal charges by over-eager prosecutors (see Kaufman, The Grand Jury—Its Role and Its Powers, 17 F.R.D. 331 (1955)), might by dint of longer service become themselves arms of the state instead of representatives of the citizenry. See 27 Fordham L.Rev. 129, 131 (1958). We have no reason to become enmeshed in the long-continuing debate or add fuel to the seemingly endless controversy as to whether the grand jury constitutes a sword or a shield. See generally materials cited in L. Hall, Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 790–838 (3d ed. 1969). By accepting Rule 6(g), Congress provided that this grand jury had to be terminated at the end of 18 months and made no provision for its extension. We cannot interpret this as a mere direction without any practical effect. Aside from the clarity of the Rule, its history and prior litigation compel the determination made below and here affirmed.

### III. THE ORGANIZED CRIME CONTROL ACT OF 1970

The Government finally argues that, although the grand jury in this case was admittedly convened pursuant to Rule 6(g),[10] which gave it a limited life of 18 months with no provision for extension, it was nonetheless properly continued by Judge Mishler in reliance upon 18 U.S.C. § 3331. It is contended that that section, which was part of Title I of the Organized Crime Control Act of 1970 was properly utilized here since the grand jury did become involved in an extended investigation of organized criminal activity.

Section 3331(a) provides that "[i]n addition to such other grand juries as shall be called from time to time," a special grand jury shall be called by the

district court at least once in every 18-month period in districts having more than four million inhabitants or in districts in which a high Justice Department official certifies to the court that such a grand jury is necessary. The special grand jury is to serve for 18 months, but the district court may extend it for additional six-month terms if necessary, but no "special grand jury term so extended shall exceed thirty-six months . . .."

We note at the outset that there is nothing in the statute or in its legislative history which would support the Government's position that a Rule 6 grand jury is somehow converted to an organized crime grand jury merely because it proceeds to investigate activities which could be characterized as organized crime. See United States v. Carter, 493 F.2d 704, 708 & n.2 (2d Cir. 1974). On the contrary, the statute itself provides that the Federal Rules applicable to regular grand juries are applicable to special grand juries "to the extent not inconsistent with sections 3331, 3332, or 3333 of this chapter." 18 U.S.C. § 3334. Since Rule 6(g) is inconsistent with section 3331 as to time limitations, it would seem clear that the net result is that each type of grand jury has its own duration fixed by its own statute. Not only is there no support in the statute for engrafting one time limitation upon another, but the confusion which such a position would generate would be typical of that which we have recounted in the history of prior statutes with blurred or non-existent termination provisions. Our discussion of congressional action in extending the life of the Watergate grand jury is also relevant on this question. Both Congress and the Department of Justice were aware of the extension provisions of section 3331. The letter of the Attorney General to the

Congress accompanying the proposed legislation referred specifically to that section as permitting extensions which were "analogous" to that sought for the Watergate grand jury. There was no argument that section 3331 was applicable to the Rule 6 grand jury, and, if it had been, the extraordinary measure of enacting a special statute to prolong the existence of the Watergate grand jury could have been avoided.

Moreover, application of the extension provision of section 3331 to a Rule 6 grand jury could produce unequal results across the country. Section 3331 applies only to certain districts, such as those having four million inhabitants. Rule 6 applies to all districts. Thus, if the argument of the Government were to prevail, Rule 6 grand juries could be extended in certain large districts but not in smaller ones. Congress could scarcely have intended such anomalous results.

■ It seems evident from the face of the statute, that it was the intent of Congress in enacting the Organized Crime Control Act to provide for a distinctive type of grand jury. The special grand juries created by the Act are limited to districts in which organized crime was deemed to be most prevalent and there is a limit of one such jury to a district unless the district judge finds that the volume of business there requires an additional grand jury, in which case he may order one pursuant to section 3332(b). These special juries are "in addition to" regular juries. In section 3333, there are special provisions for the issuance of reports by the juries. In the event a district judge fails to extend the jury or discharges it before it has determined that its business is completed, the jury is permitted to appeal to the Chief Judge of the Circuit for an order of continuance under section 3331(b). These features are unique to the special grand jury created by the Act.

■ The legislative history of the Act also demonstrates that Congress intended, not to modify existing procedures for the summoning and functioning of Rule 6 grand juries, but rather to provide for a distinct, new grand jury in response to a new problem. The bill as originally introduced, S.30, applied to all grand juries so as to provide for their extension beyond 18 months. Hearings on S.30 Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary, 91st Cong., 1st Sess. 7 (1969). However, after much criticism, directed mostly to other portions of the proposal, the bill was amended and passed in its present form. Act of Oct. 15, 1970, Pub.L. No. 91–452, Title I, 84 Stat. 923. We find nothing in the history of the Act to support the Government's argument on this phase of the case.[11]

## IV. CONCLUSION

In sum, the factors discussed are persuasive that Rule 6(g) imposes a limitation upon the life of a grand jury which, if exceeded, renders the indictments returned after the 18-month period invalid. The extensions permitted under the Organized Crime Control Act are not available here and, in view of the clear language of Rule 6(g), there is no inherent or implied judicial power permitting continuances.

We are, of course, fully cognizant of the fact that our decision here constitutes much more than an academic discussion and that other indictments will be dismissed on the basis of this opinion. It may well be that criminal proceedings which would be in the public interest will be frustrated and that

---

11. Congress did not attempt to limit the applicability of Title I of the Act by specifically defining the type of criminal conduct which the special grand jury would be authorized to investigate, apparently because of the difficulty in formulating a definition of organized crime. See Hearings on S. 30, *supra*, at 346–47. However, as we have indicated, Congress did impose restrictions upon the special grand jury in other ways, thus creating a unique body.

those who might be found guilty will escape trial and conviction. However, it is fundamental to our jurisprudence that the rule of law must prevail and that the prosecution of those suspected of crime must itself proceed according to the law, and not otherwise.

Affirmed.