**Walter WAX and Lawrence Levine, Petitioners,**

**v.**

**Honorable Constance Baker MOTLEY, United States District Judge, Respondent.**

**UNITED STATES of America,**

**v.**

**Norman RUBINSON et al., Defendants.**

**No. 732, Docket 75–3003.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1975.

Decided Jan. 21, 1975.

Thomas A. Andrews, New York City (Shea, Gould, Climenko, Kramer & Casey and John J. Grimes, New York City, of counsel), for petitioners Wax and Levine.

Frank Wohl, Asst. U. S. Atty., Southern District of New York, New York City (Paul J. Curran, U. S. Atty., for the Southern District of New York, Jo Ann Harris, and John D. Gordan, III, Asst. U. S. Attys., of counsel), for respondent.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

PER CURIAM:

This is a petition for a writ of prohibition and mandamus directed against Honorable Constance Baker Motley, United States District Judge for the Southern District of New York, to dismiss an indictment against certain defendants upon the ground that the indictment is void because the term of the grand jury had allegedly expired prior to the return of the indictment, and seeking a stay of the trial thereon which had been scheduled for January 20, 1975. Upon hearing the oral argument, we granted a stay until January 22nd. We now decide the petition for mandamus on the merits, and we deny it for the reasons set forth.

In United States v. Fein, 504 F.2d 1170 (1974), this court upheld the dismissal of an indictment on the ground that it was invalid because returned by the grand jury after the expiration of an 18 month term although a court order had provided for a six months' extension of the grand jury before the termination of the 18 month term. As a result of the decision in *Fein*, petitioners here seek to void their indictment. We find that the circumstances involved in *Fein* were significantly different from the circumstances here involved.

In *Fein* the order empanelling the grand jury, while referring to it as a "special grand jury" provided that it was being empanelled "pursuant to Rule 6(a) and (g), Federal Rules of Criminal Procedure" and that it was "to serve for a period not to exceed eighteen (18) months from the date it is convened." 504 F.2d at 1171. In *Fein*, in the eighteenth month of the grand jury's life, an Assistant United States Attorney for the Eastern District of New York who was supervising the grand jury's investigation orally applied to Chief Judge Mishler for an extension of the term of the grand jury. On August 30, 1972, in the eighteenth month of the grand jury, Judge Mishler signed an order extending its term for an additional six months "upon the authority of 18 U.S.C. § 331" (Ibid.). To understand the ruling in *Fein*, it is necessary to review its rationale of decision. A regular grand jury is empanelled pursuant to Rule 6(a), "at such times as the public interest requires." Under Rule 6(g) "[N]o grand jury may serve more than 18 months."

In 1970 Congress enacted the Organized Crime Control Act of 1970, part of which became Section 3331(a) of Title 18. Section 3331(a) provided that in addition to such other grand juries as shall be called from time to time, each district court which is located in a judicial district containing more than four million inhabitants, may order a special grand jury to be summoned at least once in each period of 18 months unless another special grand jury is then serving. The section provides that the grand jury shall serve for a term of 18 months, but that if at the end of such term or any extension thereof the district court de-

termines that the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. But no special grand jury term so extended shall exceed 36 months except under circumstances not involved in *Fein.* We held in *Fein* that since the grand jury is a creature of statute the original order stating that the grand jury in the Eastern District had been empanelled pursuant to Rule 6(a) and (g) specifically to serve for a period not to exceed 18 months made this a regular grand jury, which could not be converted into a special grand jury under § 3331 with its provisions for extension. We held that in these circumstances the grand jury simply became *functus officio.*

It was natural enough that defendants in criminal cases involving other extended grand juries would seek to find grounds for dismissal of their indictments under our decision in *Fein.* We think in the case at bar that the attempt should be held unsuccessful. In the case at bar the original order did not refer to § 3331 nor, on the other hand, did it refer, as in *Fein*, to Rule 6(a) and (g). The order in this case did not specify that the jury was to sit 18 months, as did the order in *Fein.* As a result, we have an order which literally sheds no light on what sort of grand jury actually had been empanelled.

 The original order of Honorable David N. Edelstein, Chief District Judge · for the Southern District of New York, dated March 17, 1972, recited that the United States Attorney for the Southern District of New York, having duly verified in writing on the 17th day of March, 1972 that the exigencies of public service required the empanelling of an additional grand jury for the disposal of Government business of the said Southern District of New York, ordered that there shall be empanelled an additional grand jury to serve from April 18, 1972. There was no termination date given. In its eighteenth month of service, Honorable Dudley B. Bonsal, United States District Judge, on October 5, 1973 extended the term of the grand jury specifically pursuant to 18 U.S.C. § 3331(a). A similar order was filed by Chief Judge Edelstein on April 15, 1974 and by Honorable Lloyd F. MacMahon, United States District Judge, on October 11, 1974. Each of the extension orders, as noted, extended the term pursuant to 18 U.S.C. § 3331(a). Thus, it would appear that the extension order in the Eastern District, which purported to extend the life of the grand jury involved in *Fein*, dealt with a regular Rule 6 grand jury. The orders in the Southern District in this case, on the other hand, purporting to extend the term of the grand jury, did not extend a grand jury that was empanelled specifically under Rule 6(a) and (g) or which had, by order, been limited to an 18 months term. In these respects, this case differs from *Fein.* The indictment herein was filed on June 4, 1974, so that if the extensions were improper, it should be dismissed because of "irregularity with respect to the grand jury." See 18 U.S.C. § 3288. While it is true that the judicial orders are generally deemed to be integrated so as to make inadmissible parol evidence to vary their terms, In re Crosby Stores, Inc., 65 F.2d 360, 361 (2 Cir. 1933), that does not preclude the court from amending its record *nunc pro tunc* so as to remove errors. Wigmore, Evidence (3d Ed.) § 2450, and cases cited. Whatever may be the rule where parol evidence is sought to be used in an effort to contradict a judicial record, here there is a patent ambiguity on the face of Chief Judge Edelstein's original order. It is completely unclear on the face of the order whether he intended to empanel an additional regular grand jury with a term of 18 months or whether he intended to empanel a special grand jury under § 3331. In these limited circumstances, it is open, therefore, for the court to correct its own judgment if, indeed, the ambiguity resulted from initial error in drafting the order. To resolve this question, Judge Motley received affidavits which related

to the circumstances under which Chief Judge Edelstein's order was made. Judge Motley found from the evidence tendered by affidavit that the Chief Judge intended to empanel a special grand jury under § 3331. Myles J. Ambrose, at the time was a Special Assistant Attorney General and Director of the Office of Drug Abuse Law Enforcement ("O.D.A.L.E.") within the Department of Justice. He swore that the use of special grand juries summoned pursuant to the unique provisions of the Organized Crime Control Act were deemed essential by the President and the Attorney General to the achievement of O.D.A.L.E. goals. He directed all O.D.A.L.E. regional directors to obtain special grand juries under the Organized Crime Control Act. He spoke with Whitney North Seymour, Jr., then United States Attorney for the Southern District of New York, and requested his cooperation in empanelling a special grand jury in the Southern District of New York. On January 6, 1972, Mr. Ambrose told Chief Judge Edelstein that he intended to ask him to summon a special grand jury under the provisions of the Organized Crime Control Act; that he desired to have a grand jury with the power to issue special reports and that it was therefore necessary that the grand jury be an Organized Crime Control Act special grand jury. Chief Judge Edelstein agreed to empanel such a special grand jury. Mr. Ambrose's assistant in New York, Andrew Maloney, was ordered to request such a special grand jury. Chief Judge Edelstein has affirmed that he was "aware that Mr. Ambrose wanted empanelled a special grand jury within the meaning of the Organized Crime Control Act of 1970 for use by the Office of Drug Abuse Law Enforcement" and that this was the nature of the additional grand jury which he ordered to be empanelled. It appears that an Assistant United States Attorney in charge of grand juries drew the actual order which failed to make specific reference to the purpose of Chief Judge Edelstein in empanelling it.

In these unusual circumstances, we agree with Judge Motley "that the grand jury which returned this indictment was intended to be and was consistently treated as a special grand jury." There is no doubt that the extensions sought treated this grand jury as having been empanelled under § 3331 but that, in itself, would be of no more avail then it was in *Fein* if the original order negated such a construction. Here it did not.

By acknowledging that Judge Motley did not exceed her authority in refusing to dismiss the indictment we should not be considered as expressing contentment with the course of events here revealed. While we recognize the pressures on district court judges, we trust that in the future more care will be exercised with respect to the form of their orders, particularly since we now have different types of grand juries with different attributes and longevities.

■■ The petitioners contend, finally, that if resort is to be had to what they call parol evidence, a hearing is required so that they may cross-examine and rebut the evidence tendered. The argument mistakes the ground of Judge Motley's decision with which we agree. This involves a *nunc pro tunc* amendment to an order in practical effect and the only question is a unilateral one, namely, whether the court's present expression of its original intention can be applied *nunc pro tunc.* We hold that this is not a proper subject for an adversary proceeding, recognizing, of course, that the judicial power to correct errors must be sharply restricted and based upon clear recollections excluding any considerations arising after the event.

■ The story of the creation of the Special Narcotics Unit and its desire to have a special grand jury under the Organized Crime Control Act communicated to Chief Judge Edelstein fully supports his own recollection of the matter and his own intentions with regard thereto. We hold that in these unusual

circumstances Judge Motley's refusal to dismiss the indictment was proper and that the petition for mandamus or prohibition should be denied on the merits.[1]

---

1. We agree with the Seventh Circuit that 18 U.S.C. § 3332(b) should not require the limitation to two of the number of special grand juries in the district, Korman v. United States, 486 F.2d 926, 934 (1973), but that the matter rests in the informed discretion of the District Court.