UNITED STATES of America, Plaintiff,

v.

Edward GILLESPIE, Defendant.

No. 86 CR 646.

United States District Court,
N.D. Illinois, E.D.

July 1, 1987.

As Amended July 29, 1987.

Patrick J. Foley, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Michael D. Monico, Barry A. Spevack, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Edward Gillespie ("Gillespie") moves to dismiss, on statute-of-limitations grounds, Counts Three and Four of the "superseding indictment" returned in this case on March 20, 1987 by the January 1987 Grand Jury. For the reasons stated in this memorandum opinion and order, Gillespie's motion is granted, though he has likely won only a Pyrrhic victory—for the United States is now free to reindict Gillespie without running afoul of the same limitations bar. This Court also dismisses the original indictment in this case (returned September 4, 1986 by the Special January 1985 Grand Jury [1]) for lack of jurisdiction—and that dismissal is what frees up the United States for further action.

Gillespie's original September 4, 1986 indictment was returned by a grand jury that had served beyond the time it was validly authorized to sit pursuant to 18 U.S.C. § 3331(a).[2] Under that section the original term of the Grand Jury had run its full 18 months, but no order had then been entered extending the Grand Jury's term beyond June 1986.

In that respect Gillespie's indictment faces much the same problems dealt with by this Court in *United States v. Lytle*, 658

---

1. Throughout this opinion the term "Grand Jury" (without further identification) will be used to refer to the Special January 1985 Grand Jury—the one whose action is at the heart of the current problem.

2. All further references to Title 18 provisions will simply take the form "Section—."

F.Supp. 1321 (N.D.Ill.1987) and by its colleagues Honorable Paul Plunkett in *United States v. Smith*, 86 CR 272, slip op. (N.D.Ill. May 20, 1987) and Honorable William Hart in *United States v. Bills*, 86 CR 339, slip op. (N.D.Ill. May 28, 1987) [Available on WEST-LAW, DCT database].[3] In factual terms, the situation of the *Gillespie* Grand Jury was closer to that in *Smith* than to *Lytle* and *Bills:*

1. Unlike the *Lytle-Bills* grand jury situation, the record evidence here does not affirmatively show that the Assistant United States Attorney specifically and consciously decided not to go before the Chief Judge to extend the Grand Jury's term.

2. Like *Smith* (and *Lytle-Bills*, for that matter), nothing was *done* here—no order was entered—by the Chief Judge at the critical time when the extension order had to be entered under Section 3331(a): at the time the Grand Jury's existence expired under law.

3. As with the grand juries involved in *Smith* and *Lytle-Bills*, the United States Attorney recently prevailed upon former Chief Judge McGarr to enter a so-called nunc pro tunc order of extension of the Grand Jury's term.

In *Lytle* this Court held such revisionist jurisprudence—a "now for then" order to "confirm" action that had never been taken in fact—was of no legal effect. In *Smith*, however, such an order was found valid. That finding operated to save the *Smith* indictment, which had been returned by citizens who had once been members of a validly empaneled grand jury, but who had later acted to indict Ms. Smith without the benefit of a current court order empaneling them to continue to serve. In *Bills* Judge Hart accepted the *Lytle* analysis and found it unnecessary to tackle the *Smith* exegesis

head on; instead Judge Hart rejected the nunc pro tunc concept for reasons akin to those that underpinned this Court's opinion in *Lytle.*

■ This Court finds it unnecessary (and inappropriate) to tiptoe around *Smith*, a decision it finds wholly unpersuasive. Of course the possible fallout effect of this opinion's analysis is worrisome to this Court: the prospect of upsetting an unknown (but assuredly large) number of indictments as having been returned without jurisdiction, for that must mean unknown numbers of guilty pleas, of trials, of sentences are tainted. Inconvenience will be visited on judges and on prosecutors. But what of the inconvenience (surely a euphemism) to defendants who are serving prison terms under void indictments—imprisoned without due process of law in the classic sense? Like all rhetorical questions, that one need only be asked—it provides its own answer. This Court believes *United States v. Fein*, 504 F.2d 1170, 1180–81 (2d Cir.1974) (quoted later in this opinion) dictates the proper result here.

*Smith* reaches a different and impermissible result from that signaled by *Lytle*,[4] and it does so via impermissible reasoning. It begins with this sentence from Section 3331(a):

If, at the end of such [original 18–month] term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months.

Doing considerable violence to ordinary English, *Smith* then takes the phrase "If ... the district court determines"—which is by its very terms merely the condition, the predicate for possible judicial action—

---

3. *Bills* involved the same Special December 1983 Grand Jury whose nonextension under Section 3331(a) this Court had dealt with in *Lytle.* In *Smith* the indictment under attack had been returned by the Special October 1984 Grand Jury, but the problem was the same: When the grand jury acted to bring the indictment, no order had been entered extending its term, so its authorization to sit (and therefore to act) had previously expired.

4. *Smith*, slip op. at 4 appears to accept *Lytle* (at least arguendo, and perhaps more fully than that). However, as this opinion reflects, *Smith* arrives at a result 180° out of phase with the principles (and the uniform holdings of the precedents) that informed *Lytle.* It should of course be understood (and it is implicit in every judicial opinion) that to the extent judicial perspectives may differ, no personal slight is intended by the rhetoric of opinion writing.

and converts that phrase into the action itself. Quite to the contrary, the congressional language and the sentence structure clearly both compel the conclusion that the *order* of extension is the required action. Once the "determination" (that is, an unimplemented judicial *thought*) is made, the statute says the court may *act* in the only way courts ever evidence their thoughts: It "may enter an order extending such term...."[5]

But both in *Smith* and here, the court—the Chief Judge—did *not* "enter an order." As held both by *Lytle* and by the authorities of higher rank on which it relies (decisions by the Supreme Court as well as Courts of Appeal), that is fatal to any judicial effort to reconstruct the past by entering a purported nunc pro tunc order. It must therefore be concluded that Gillespie's original September 1986 indictment, having been the product of a grand jury acting without legal authority, was void. Both because *Lytle* is not yet published and to make this opinion self-contained, this Court will plagiarize freely from its own *Lytle* opinion in demonstrating why that is so.

Fundamental principles of nunc pro tunc ("now for then") orders—something most of us encounter in law school and never have to deal with again—teach that such orders are only a means for regularizing, as a matter of record, court orders that were *in fact* entered in the past but that, due to some clerical oversight, did not find their way onto the docket or other appropriate court record. Nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating "facts" that never occurred in fact.

Almost exactly a century and a quarter ago, the Supreme Court reconfirmed those basic and time-honored propositions without feeling it even had to cite supporting authority to that end (*Gray v. Brignardello*, 68 U.S. (1 Wall.) 627, 17 L.Ed. 693 (1863)). Something over a decade ago Judge Wisdom restated those same principles in *Recile v. Ward*, 496 F.2d 675, 680 (5th Cir.1974):

We hold that Recile was not entitled to entry of a judgment granting his discharge nunc pro tunc. Recile's assertion rests on the principle that such entry is appropriate where judgment "though formally pronounced, ha[s] from accident or from negligence of the clerks never been put on record". Freeman on Judgments § 122 (5th ed. 1925); see, e.g., *United States v. Chicago & A.R. Co.*, 7 Cir.1918, 162 C.C.A. 273, 250 F. 101. But it is also the rule that

... the entire purpose of entering judgments and decrees as of some prior date is to supply matters of evidence, and not to supply or modify matters of fact. The failure of a court to act, or its incorrect action, can never authorize a nunc pro tunc entry. If a court does not render judgment, or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions.

Freeman on Judgments § 131; see *Gray v. Brignardello*, 68 U.S. (1 Wall.) 627, 17 L.Ed. 693. And the burden is on the party seeking nunc pro tunc entry where no judgment has been recorded to prove that the failure to record is the result wholly of clerical misprision, rather than of the failure of the court to act.

No effect whatever can thus be given to the claimed March 3, 1987 nunc pro tunc order.[6] It therefore follows that the 1986

---

5. It makes no sense to argue, as *Smith* does (slip op. at 6), that other statutory provisions *mandate* the entry of orders while Section 3331(a) does not. Indeed, in an odd way, the unsound *Smith* argument might be strengthened if Section 3331(a) *were* mandatory. Then it might perhaps be said the issuance of the grand jury extension order was only ministerial—that the judicial act *must* follow the judicial thought. But "may" (the verb used in Section 1331(a)) also connotes "may not" as another alternative.

That is what we mean when we speak of "shall" as normally mandatory and "may" as normally permissive. This linguistic debate, however, simply buttresses the uniform law of nunc pro tunc orders as discussed in *Lytle* and repeated hereafter in this opinion.

6. Chief Judge McGarr's March 3 order states as one possibility "that such an order [that is, a timely one] was executed and has since been lost." Nothing whatever is offered to evidence

indictment was void. *Fein,* 504 F.2d at 1173;[7] *United States v. Johnson,* 123 F.2d 111, 120 (7th Cir.1941), *rev'd on other grounds,* 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) (a reversal that, at least by strong implication, effectively confirmed the nullity of an indictment by a grand jury that was then without legal existence; see *id.* at 507, 508, 63 S.Ct. at 1235, 1236). Nor, as already pointed out, may considerations of expediency be permitted to change that result. As *Fein,* 504 F.2d at 1180–81 said so eloquently:

> We are, of course, fully cognizant of the fact that our decision here constitutes much more than an academic discussion and that other indictments will be dismissed on the basis of this opinion. It may well be that criminal proceedings which would be in the public interest will be frustrated and that those who might be found guilty will escape trial and conviction. However, it is fundamental to our jurisprudence that the rule of law must prevail and that the prosecution of those suspected of crime must itself proceed according to the law, and not otherwise.

■ As in *Lytle,* however, that is not the end of the story. In *Lytle* Section 3288 saved the later indictment, which had been returned more than five years after the commission of the acts that had been timely charged in the earlier invalid indictment. In an anomalous way, the same result cannot obtain here. Such cases as *United States v. Grady,* 544 F.2d 598, 601–02 (2d Cir.1976) and *United States v. Friedman,* 649 F.2d 199, 203–04 (3d Cir.1981) persuasively teach that Section 3288 applies only to new indictments brought *after* an earlier indictment has been *dismissed* because of flaws affecting the original grand jury. In this case, by contrast, the second indictment was truly a superseding indictment, brought *before* any such dismissal had been ordered.[8]

Accordingly the United States cannot look to the tolling provision of Section 3288 to save Counts Three and Four of the March 20, 1987 indictment: Those counts were brought out of time, and no other statute or judicial authority operates to make the original *invalid* indictment toll the limitations period for the same charges included in that earlier indictment. That is the natural corollary of such decisions as *Friedman,* 649 F.2d at 203 (footnote omitted, emphasis in original except for this Court's added emphasis of the words "valid" and "validly"):

> But in this case, the Government does *not* rely on section 3288. Rather it relies on the doctrine that a *valid* indictment tolls the statute of limitations and that return of a superseding indictment *prior* to the dismissal of the original indictment does not violate the statute of limitations if the superseding indictment does not substantially alter the charge. The Government's position is that the bringing of the first indictment, which was timely, tolled the statute of limitations and that as long as it remained pending, the superseding indictment could be brought regardless of the statute of limitations, if the superseding indictment did not broaden the charges. The Government finds support for its position in *United States v. Grady,* 544 F.2d 598 (2d Cir.1976). As in this case, the Government in *Grady* had obtained a timely indictment, and, while the original indictment remained pending, had ob-

such an assumption. There is nothing at all of a contemporaneous nature that could bring into play the firmly established and limited principles under which nunc pro tunc orders may be entered.

**7.** Again it would lengthen this opinion unduly to repeat what has been said so well in *Fein.* Its entire discussion (504 F.2d at 1173–79) merits reading.

**8.** *Gillespie moved to dismiss the original indictment March 5, 1987.* Without awaiting a ruling on that motion, the United States went before a properly constituted grand jury (the January 1987 Grand Jury) and obtained the superseding indictment March 21. As Justice Blackmun said in his concurring opinion in *United States v. Rojas-Contreras,* 474 U.S. 231, 106 S.Ct. 555, 559, 88 L.Ed.2d 537 (1985):

> The term "superseding indictment" refers to a second indictment issued in the absence of a dismissal of the first.

tained a superseding indictment that otherwise would not have been timely. In response to a statute of limitations challenge to the superseding indictment, the court held:

> Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment.... Since the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still *validly* pending, if and only if it does not broaden the charges made in the first indictment, cannot be barred by the 'statute of limitations.

In short, the *Grady-Friedman* class of cases establishes a judicial rule that a *valid* indictment insulates from statute-of-limitations problems any refiling of the same charges during the pendency of that valid indictment (that is, the superseding of a valid indictment). But if the earlier indictment is *void*, there is no legitimate peg on which to hang such a judicial limitations-tolling result.

It follows then that Counts Three and Four of the March 20, 1987 indictment must indeed be dismissed because out of time. That, however, gives Gillespie only temporary respite. Because the original indictment returned by the Grand Jury in September 1986 was wholly without legal force or effect, it too is dismissed. And that gives the government free rein, during the next six months, to submit the Count Three and Four charges to a regularly constituted grand jury under the authority of Section 3288.