**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ARMORED TRANSPORT, INC.,
Appellant–Defendant.**

**No. 79–1620.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1980.

Decided Oct. 7, 1980.

---

Don Howarth, Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellant–defendant.

Marion L. Jetton, Washington, D.C., for plaintiff–appellee; Robert B. Nicholson, Marion L. Jetton, Washington, D.C., on brief.

Before FARRIS and NELSON, Circuit Judges, and JAMESON *, District Judge.

NELSON, Circuit Judge:

This appeal presents several issues of first impression in this circuit. The primary question is when does a federal grand jury commence service for the purposes of Rule 6(g), Fed.R.Crim.P., which provides that "no grand jury may serve more than 18 months." The District Court held that the life of the grand jury is measured from the date on which it is authorized to begin serving, rather than the date on which it is impaneled and sworn. We disagree. For purposes of Rule 6(g) the life of a grand jury commences on the impanelment date. The indictment against Armored Transport was handed down more than eighteen months after the grand jury in this case was impaneled and is invalid.

We decline to reverse Armored Transport's conviction, however. Because the crimes charged are not infamous within the meaning of the fifth amendment, and because the government could, therefore, have proceeded by information, the conviction is affirmed.

## STATEMENT OF FACTS

On March 9, 1979, the grand jury [herein, the Martin grand jury] returned an indictment against appellant Armored Transport, Inc. and two of its officers, Irvin and De-Salvo, alleging felony violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The Martin grand jury was impaneled and given the oath of impanelment on 'August 26, 1977. Jurors were then excused from the courtroom and told to return when notified by the United States Attorney's office by mail. Evidence was first heard on October 17,1977. The Martin grand jury's term was extended twice by court order to March 10, 1979. The indictments were returned on March 9, 1979.

Pursuant to a plea bargaining agreement, Armored Transport pleaded nolo contendere to the indictment and was fined $200,000. On June 28, 1979, a former Justice Department Antitrust Division lawyer who was once responsible for prosecuting this case, filed and served an amicus curiae motion to vacate judgments, to allow withdrawal of pleas, and to dismiss the indictment. The amicus motion argued that the original indictment was rendered by the grand jury after its term had expired, and was a nullity. It also suggested that the Government had a duty to disclose information pertinent to the length of the grand jury's term prior to the entry of the nolo contendere plea. The defendants joined the amicus motion in all respects. The district court denied the motions. This appeal follows.

Only the appeal by Armored Transport remains. The appeals by Irvin and DeSalvo were voluntary dismissed.

---

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

## ANALYSIS

■ Rule 6(g), Fed.R.Crim.P., provides in pertinent part:

"A grand jury shall serve until discharged by the court but no grand jury may serve more than 18 months. The tenure and powers of a grand jury are not affected by the beginning or expiration of a term of court."

In this case, the Martin grand jury, was impaneled on August 26, 1977. Under Local Rule 16 of the Central District of California, the Government contends that service did not begin until the second Monday in September (September 12, 1977). The indictment was returned against appellant on March 9, 1979. If service began on September 12, 1977, then the indictment is within the eighteen month period. If, however, the first date of service is the impanelment date, the indictment is invalid because handed down by an expired grand jury. *United States v. Macklin,* 523 F.2d 193, 195 (2d Cir. 1975); *United States v. Fein,* 504 F.2d 1170, 1173 (2d Cir. 1974). Such a defect—that the grand jury lost its power to hand down indictments—is jurisdictional and may be raised at any time. *Macklin,* 523 F.2d at 195; *But see Shimon v. United States,* 352 F.2d 449, 450–51 (D.C. Cir. 1965); *United States v. Mitchell,* 389 F.Supp. 917, 919–20 (D.D.C. 1975), *aff'd on other grounds,* 559 F.2d 31 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

The District Court held that Rule 6(g) does not require the date upon which a grand jury begins service to be the impanelment date, and that the Central District of California can properly determine when a grand jury starts service. Local Rule 16 provides in relevant part:

For the purpose of empaneling both grand and petit jurors sessions of the court in all divisions of this district shall commence on the first Monday in March and the second Monday in September.

. . . . .

As soon as practicable, before or after commencement of each session of the court, veniremen shall be empaneled and sworn to serve during the ensuing session and until ordered discharged by the court. Rule 57(b), Fed.R.Crim.P., provides that "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Because Rule 6(g) does not specifically prescribe the procedures laid down by Local Rule 16, the question before this court is whether Local Rule 16 is inconsistent with Rule 6(g).

First, we note that prior decisions dealing with grand jury terms and Rule 6(g) do not decide the issue presented here. *See, e. g., In re Special Grand Jury Impaneled February 12, 1976,* 565 F.2d 1225 (1st Cir. 1977); *United States v. Stofsky,* 527 F.2d 237 (2d Cir. 1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976); *Wax v. Motley,* 510 F.2d 318 (2d Cir. 1975). These decisions simply assume that the date of commencement of service of the grand jury is the impanelment date. In the course of addressing other issues, such as whether a court may extend a grand jury beyond eighteen months, *see, e. g., United States v. Fein,* 504 F.2d 1170 (2d Cir., 1974), these courts use the date of impanelment and swearing as the start of the eighteen month period. So the issue whether Rule 6(g) permits a local district to separate the commencement of grand jury service from the impanelment date is one of first impression.

■ Armored Transport argues that the legislative history of Rule 6(g) requires the impanelment date to be the first day of service for the grand jury. We agree. The major purpose of an eighteen month limitation was to establish a uniform limitation on the life of the grand jury.[1] *United States v. Fein,* 504 F.2d at 1176. This purpose is most clearly served by a bright line rule that a grand jury commences service on the impanelment date. The alternative rule, that each local district may separate impanelment and service, raises the possi-

---

1. The 18 month limitation was first enacted as an amendment to 28 U.S.C. § 421, Act of Apr. 17, 1940. 54 Stat. 101. Rule 6(g) is the successor to 28 U.S.C. § 421.

bility that one district could impanel a grand jury to commence service in six months and another district could authorize service to begin even a year after impanelment. Although the time span in this case is only two weeks, we consider that uniformity in grand jury service is seriously compromised once separation of the impanelment date and commencement of service is permitted.

Further, we are concerned about the logical basis of a rule that permits creation of a grand jury that has no concomitant power to act. The purpose of the grand jury is to hear testimony and to consider whether an indictment should be handed down against the person charged. It makes little sense to create such a body but to withhold its power until a later time. The more sensible rule, and one that is clearly consistent with the purpose of Rule 6(g), equates the commencement of grand jury service with the power of that body to act. Moreover, the government has admitted that, under certain circumstances, a grand jury that has been impaneled and sworn could be called to serve *before* the date of service specified by Local Rule 16. This suggests that the power to act arises upon the impanelment date.

■ A second purpose of Rule 6(g) was to sever the prior relationship between the commencement of the grand jury term and the terms of court. *United States v. Fein,* 504 F.2d at 1176. Rule 6(g) provides that "[t]he tenure and powers of a grand jury are not affected by the beginning or expiration of a term of court." But Local Rule 16 provides for grand jury service to commence in conjunction with the start of court sessions. The local district can impanel a grand jury on whatever date it chooses, including the start of a court session, but to the extent that Rule 16 requires that grand jury service be tied to the commencement of a term of court it is inconsistent with Rule 6(g) and cannot be upheld.

The district court concluded that Rule 16 serves an important local purpose, namely, it allows for efficient processing of numerous grand jury candidates and accommodation of the Chief Judge's schedule. But there is no showing that administrative convenience could not be achieved equally well while also measuring the life of the grand jury from the impanelment date. A grand jury can be convened at any time, Fed.R. Crim.P. 6(a), either before or after the term of court commences, as considerations of administrative convenience dictate. Moreover, these administrative concerns are minimized in light of the fact that grand juries meet relatively rarely during their period of service. In this case the Martin grand jury sat a total of eleven times over the period from August 26, 1977 to March 10, 1979.

The District Court also found that the impaneling judge clearly intended the grand jury to commence its service from the date in September and not the date in August when the jurors were sworn. But the intent of the impaneling judge does not control here because we have concluded that Rule 6(g) requires grand jury service to commence on the impanelment date.

■ Despite the invalid indictment by grand jury, we affirm the district court. Because the crimes charged are not infamous within the meaning of the fifth amendment and because the Government could have proceeded by information, the District Court correctly retained jurisdiction and sustained the plea entered by defendant.

The fifth amendment provides that "capital or otherwise infamous crimes" must be prosecuted by indictment. So, we must decide whether Armored Transport has been charged with an infamous crime. Appellant argues that all felonies are infamous crimes, and that since the Sherman Act expressly defines a violation of 15 U.S.C. § 1 as a felony, any defendant charged with such a violation may only be prosecuted by indictment. The district court rejected this line of reasoning and held that the indictment clause of the fifth amendment does not extend to a corporation.

■ We need not consider whether corporations can ever be charged with infamous crimes. Our inquiry is concluded

**1318**

when we determine that Armored Transport has not been charged with such a crime. The Supreme Court has provided substantial, if somewhat ambiguous, guidance as to what constitutes an infamous crime. Early cases discuss two possible approaches to the definition of "infamous". A crime may be classified infamous either because of the nature of the crime, or because the potential punishment is infamous. *See Mackin v. United States*, 117 U.S. 348, 350–51, 6 S.Ct. 777, 778, 29 L.Ed. 909 (1886); *Ex parte Wilson*, 114 U.S. 417, 422, 5 S.Ct. 935, 937, 29 L.Ed. 89 (1885). The following language from *Mackin* is instructive:

> The leading word "capital" describing the crime by its punishment only, the associated words "or otherwise infamous crime" must, by an elementary rule of construction, be held to include any crime subject to an infamous punishment, even if they should be held to include also crimes infamous in their nature, independently of the punishment affixed to them. Having regard to the object and the terms of the Amendment, as well as to the history of its proposal and adoption, and to the early understanding and practice under it, no person can be held to answer, without presentment or indictment by a grand jury, for any crime for which an infamous punishment may lawfully be imposed by the court. *The test is whether the crime is one for which the statutes authorize the court to award an infamous punishment*, not whether the punishment ultimately awarded is an infamous one; *when the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury.*

117 U.S. at 350–51, 6 S.Ct. at 778 (emphasis added). Subsequent decisions, relying on *Mackin* and *Ex parte Wilson*, interpret "infamous" by examination of the punishment imposed. *E. g., United States v. Moreland*, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922) (imprisonment at hard labor in the workhouse in an infamous punishment); *Parkinson v. United States*, 121 U.S. 281, 7 S.Ct. 896, 30 L.Ed. 959 (1887) (imprisonment in penitentiary is infamous punishment); *United States v. Driscoll*, 612 F.2d 1155 (9th Cir. 1980) (infamous crime is one punishable by more than one year imprisonment); *United States v. Johnson*, 585 F.2d 374, 377 (8th Cir. 1978) (crime punishable for no more than one year imprisonment is not infamous) *cert. denied*, 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979); *United States v. Pandilidis*, 524 F.2d 644, 649 n.7 (6th Cir. 1975) (infamous crimes are those that can result in incarceration in a penitentiary) *cert. denied*, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976). *See also, United States v. May*, 622 F.2d 1000 (9th Cir., 1980); Fed.R.Crim.P. 7(a), ("[A]n offense which may be punishable by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment.")

In addition to the above authority is a line of cases that holds that all felony prosecution be begun by indictment. *See, e. g., Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). However, a felony is defined in 18 U.S.C. § 1(1) (1976) as an offense that is punishable by death or imprisonment for a term exceeding one year. Thus *Stirone* can be construed to hold that an offense punishable by death or imprisonment for a term exceeding one year must be prosecuted by indictment. Again, then, our inquiry returns to the potential punishment triggered by the crime. Nor does statutory designation of the crime as a felony make the crime infamous. That designation was first placed in the Sherman Act by the Antitrust Procedures and Penalties Act, Sec. 3, Pub. L.No. 93–528, 88 Stat. 1706, 1708 (1974). The Procedures and Penalties Act also increased the maximum term of imprisonment for individual violators from one to three years and, in our opinion, the redesignation of the crime as a felony was intended only to make the Sherman Act conform to the general definition of felonies, *see* 18 U.S.C. § 1(1) (1976), and not to classify violations of the statute as infamous. *See* 120 Cong.Rec. 36, 338–39 (1974) (remarks of Rep. Rodino).

■ We now apply the above analysis to the present case. Under the punishment provision of 15 U.S.C. § 1, as amended in 1974, a corporation is potentially subject to a fine not exceeding one million dollars if convicted.[2] Since indictment is constitutionally required only when a defendant is potentially subject to an infamous punishment, Armored Transport has no right to indictment because a fine is not such a punishment.[3] We agree that the public's notion of what constitutes an infamous punishment varies from one age to another, *Mackin v. United States*, 117 U.S. 348, 351, 6 S.Ct. 777, 778, 29 L.Ed. 909 (1886), but we disagree that a fine is as infamous a punishment to a corporation as a year of imprisonment, *e. g. United States v. Driscoll*, 612 F.2d 1155 (9th Cir. 1980), or hard labor, *e. g. United States v. Moreland*, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922) is to an individual. Deprivation of liberty takes away from an individual his ability to work, to support and live with his family, to engage in social activity, and other highly valued attributes of living in our society. A corporation in violation of 15 U.S.C. § 1 can only suffer a monetary penalty.

While we sympathize with appellant's argument that a one million dollar fine may mean considerable hardship or even economic ruin to a corporation, the gravity of this consequence to a corporation seems no greater than the potential gravity of a large fine upon an individual. Clearly, an individual charged with an offense for which the maximum penalty is a fine is not constitutionally entitled to indictment by grand jury. Moreover, even potential deprivation of liberty has not been sufficient to require the constitutional protection afforded by the fifth amendment indictment clause. *See United States v. Driscoll*, 612 F.2d 1155 (9th Cir. 1980) (individual poten-

tially subject to more than one year imprisonment); *United States v. Moreland*, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922) (possibility of hard labor). The potential punishment must be infamous, and a fine, levied against either an individual or a corporation, simply does not fit within the meaning of that word, as interpreted by the Supreme Court.

■ We recognize the result of our holding is that an individual charged with a violation of 15 U.S.C. § 1 must be indicted but that a corporation charged with the same offense may be proceeded against by information. But an accused is not entitled to indictment unless "in danger of being subjected to an infamous punishment if convicted." *Mackin v. United States*, 117 U.S. at 351, 6 S.Ct. at 778. An individual convicted of a violation of 15 U.S.C. § 1 is potentially subject to three years imprisonment whereas a corporation is potentially subject to no greater penalty than a one million dollar fine. The only punishment that is directly relevant to classification of a crime as infamous is the potential punishment that the statute imposes on the particular defendant being tried. Congress may treat different classes of defendants differently and it has done so here.

We conclude, therefore, that the right of indictment guaranteed by the fifth amendment does not extend to a corporation charged under 15 U.S.C. § 1. Because Armored Transport does not have the right to an indictment, the Government could have proceeded against it by information. In this circumstance, the District Court was not deprived by the invalid indictment of jurisdiction over the defendant.

■ An invalid indictment may be treated as a valid information, provided the defendant has no constitutional right to in-

---

**2.** 15 U.S.C. § 1 (1976) provides in relevant part:

Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by a fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars

or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

**3.** We leave open the question whether infamous punishments might be fashioned in the future that could be inflicted upon corporations.

dictment and provided no prejudice results to the defendant. While we agree with the proposition stated by the Sixth and Third Circuits that "once the prosecution elects to proceed by indictment it must follow the rules developed to govern use of indictments," *United States v. Pandilidis*, 524 F.2d 644, 647 (6th Cir. 1975), reversal is required only where defendant makes a sufficient showing that the process followed by the Government results in actual prejudice to any of the interests of the defendant protected by the indictment procedure. *Id.* at 648.[4]

The error in this case is that the indictment against Armored Transport was issued after the grand jury term had expired. Because Armored Transport had no right to indictment under the fifth amendment, this error does not reach constitutional dimension. So the appropriateness of reversal must be determined under Rule 52(a), Fed. R.Crim.P., which provides:

"[A]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

We fail to perceive any substantial rights of the defendant that have been affected by the invalid indictment. The most that can be said is that if Armored Transport had known the impanelment date, it could have moved to dismiss the indictment before entering its plea of nolo contendere. But that would not have relieved it from a prosecution by information, which the Government could file at any time, Rule 7(a), Fed.R. Crim.P., subject to the applicable statute of limitations. Moreover, since Armored Transport chose to plead nolo contendere, any advantage created by the grand jury discovery process was not used by the Government against appellant at trial. We note further that even after the grand jury investigation was complete, information obtained during these proceedings could have been used against appellant if the government had decided to proceed by information instead of by indictment. *See* Fed.R.Crim.P. 6(e)(3)(A).

Because we hold that the indictment was handed down by an expired grand jury and is therefore invalid, we do not reach the other grounds asserted by appellant for invalidating the indictment.

For the reasons stated above, the conviction of Armored Transport is hereby AFFIRMED.

---

4. The *Pandilidis* court found no showing of prejudice to the defendant where amendment of a grand jury indictment was permitted without submission of that amendment to the grand jury as required under Rule 7(e), Fed.R.Crim.P. 524 F.2d at 649. *Contra, United States v. Gold-* *stein*, 502 F.2d 526 (3d Cir. 1974) (even in misdemeanor cases, in which indictments are not constitutionally required, any amendment to an indictment without grand jury action results in automatic prejudice to defendant).