**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANDREW SANDEEN,

*Defendant-Appellant.*

No.22-10003

D.C. No.
1:19-cr-00167-
JAO-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Submitted June 14, 2024[*]
Honolulu, Hawaii

Filed June 27, 2024

Before: Consuelo M. Callahan, Andrew D. Hurwitz, and
Holly A. Thomas, Circuit Judges.

Opinion by Judge Hurwitz

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal Law

The panel dismissed an appeal to the extent it attacked the superseding indictment, and affirmed the judgment in all other respects in a case in which Andrew Sandeen's plea agreement reserved the right to appeal the denial of his suppression motions but otherwise waived the right to appeal his conviction and sentence.

The central issue was whether the return of an indictment by an expired grand jury is a jurisdictional defect that may be raised by a defendant on appeal notwithstanding an enforceable appeal waiver in a plea agreement. In *United States v. Armored Transport, Inc.*, this court held that the improper empanelment of a grand jury is a jurisdictional defect that "may be raised at any time." 629 F.2d 1313, 1316 (9th Cir. 1980). However, *Armored Transport* is clearly irreconcilable with the Supreme Court's intervening opinion in *United States v. Cotton*, which held that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. 625, 630 (2002). The panel therefore held that Sandeen's plea agreement waived his right to claim on appeal that a superseding indictment was rendered by an expired grand jury, and dismissed the appeal insofar as it challenged the superseding indictment.

Because the plea agreement preserved Sandeen's ability to appeal the district court's denial of his motions to suppress evidence, the panel addressed those orders and found no

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

error. In doing so, the panel (1) rejected Sandeen's argument that the district court clearly erred in finding the arresting agent and a cooperating witness credible; (2) rejected Sandeen's argument that the district court erred in finding probable cause to stop a vehicle and arrest Sandeen; (3) wrote that Sandeen forfeited his argument concerning coercion of a witness; and (4) concluded that there was in any event no evidence that the witness was illegally coerced.

**COUNSEL**

Michael F. Albanese and Kenneth Sorenson, Assistant United States Attorneys; Clare E. Connors, United States Attorney, District of Hawaii; Office of the United States Attorney, Honolulu, Hawaii; for Plaintiff-Appellee.

Harlan Y. Kimura, Harlan Kimura Law, Honolulu, Hawaii, for Defendant-Appellant.

## OPINION

HURWITZ, Circuit Judge:

The central issue in this case is whether the return of an indictment by an expired grand jury is a jurisdictional defect that may be raised by a defendant on appeal notwithstanding an enforceable appeal waiver in a plea agreement. In *United States v. Armored Transport, Inc.*, we held that the improper empanelment of a grand jury is a jurisdictional defect that "may be raised at any time." 629 F.2d 1313, 1316 (9th Cir. 1980). However, *Armored Transport* is clearly irreconcilable with the Supreme Court's intervening opinion in *United States v. Cotton*, which held that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. 625, 630 (2002). We therefore hold that Andrew Sandeen's plea agreement waived his right to claim on appeal that a superseding indictment was rendered by an expired grand jury. We dismiss Sandeen's appeal insofar as it challenges the superseding indictment. Because the plea agreement preserved Sandeen's ability to appeal the district court's denial of his motions to suppress evidence, we address those orders, and finding no error, affirm.

I.

In November 2019, Department of Homeland Security ("DHS") Special Agent Ryan Faulkner arrested Viliseni Matiaki for drug and gun offenses.[1] Matiaki quickly "agreed to cooperate" and told Faulkner he "already planned on

---

[1] These facts come from the evidentiary hearing on Sandeen's suppression motions and are presented in the light most favorable to the government, the prevailing party. *See United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009).

meeting an individual named Drew to purchase a large amount of dope." After reviewing a photograph, Matiaki identified Drew as Andrew Sandeen. Faulkner then planned a "buy-bust operation"—a plan "to continue the already scheduled transaction in a more controlled setting"—for that evening.

Later that day, investigating agents recorded two calls between Matiaki and Sandeen. During the first, Matiaki confirmed that he would meet Sandeen at a Walmart parking lot. Matiaki also asked Sandeen, "What's up with that, uh, brown stuff?" Faulker, who listened in on this conversation, knew that "brown stuff" is common vernacular for heroin. Sandeen replied, "Yeah, yeah, I'm all good, bro." After the call, Matiaki agreed to wear a recording device, meet with Sandeen, and buy the drugs.

Faulkner, DHS Special Agent Ivan Young, and Police Officer Nicholas McDaniel then searched Matiaki's car, finding neither contraband nor firearms; the four of them next proceeded to a gas station near Matiaki's residence. Young attempted to install a recording device near the shifter in the car, but Matiaki moved it to the sunroof area because he thought "that was the best place for [the officers] to hear" his conversations.

While at the gas station in his car with McDaniel and Young, Matiaki placed a call to Sandeen. Sandeen said that he had a "big bindle . . . divided up like it was last time," and that he had to "double-check the weight on everything and organize it." When Matiaki suggested that Sandeen "put it all in one bag," Sandeen said he only had bags that fit "a hundred and eighty per bag." Faulkner, waiting in a separate vehicle, listened to a recording of this call; he knew that

"bindle," "bags," and "weight" are terms commonly used to describe quantities of illegal drugs.

McDaniel and Young then joined Faulkner in his vehicle. Matiaki, now alone in his car, initiated an "open-mic call," allowing the three officers to listen to upcoming conversations in real time. He then drove to the Walmart parking lot, where Sandeen entered his vehicle with a backpack. Matiaki drove out of the parking lot, followed by the officers, who heard the following exchanges over the "open-mic":

> **Matiaki**: So, what's good with it. That last stuff was wet, man, what's going on.
> **Sandeen**: I don't know. I know that it was wet, but this one's dry.
> **Matiaki**: Like, are you sure its dry dry, or . . . ?
> **Sandeen**: Its . . . dry . . .
> **Matiaki**: [unintelligible] I got people complainin' about that shit being wet, Dre.
>
> . . .
>
> **Matiaki**: So let's, let's see what's crackin'.
> **Sandeen**: [rustling sound] This is two, it's a little over but it's all, it's not wet.
> **Matiaki**: Why's it all smashed up?
> **Sandeen**: It's not all smashed, that's just some of, some of them are mostly big pieces. It came in a big thing and I was just trying to weigh it out.

Faulkner knew that "wet" and "dry" are commonly used to describe the appearance of methamphetamine and found

Sandeen's reference to "two" consistent with Matiaki's tip about a two-pound drug transaction. After listening to this conversation, the officers stopped and searched Matiaki's car. They found a backpack in the front passenger side containing a Ziploc bag of methamphetamine and arrested Sandeen, who had been occupying that seat.

Matiaki then went home. Sandeen's father Larry visited Matiaki's home, told Matiaki he had "screwed [Sandeen] over," and asked him to sign a document that read in relevant part: "I, Viliseni M., swear the police didn't ask my permission to put recording device in my car the night of arrest of Andrew Sandeen in my car." Matiaki signed the statement "to get [Larry] off my property." Larry visited Matiaki at least three more times. Matiaki also received a phone call from someone purporting to be Sandeen's mother, who told him "I'm worse than Larry," and that "she'd come and get [him]."

Sandeen later urged Matiaki to sign a document reading:

> It has come to my attention that the officers and agents that had entered my vehicle to do the authorized search placed a hidden recording device that I was unaware of. I did not give them permission to place that recording device within my vehicle, and it was placed without my knowledge. . . . I did not give verbal or written consent for a hidden recording device to be placed in my vehicle.

Matiaki signed the document to keep Larry away from his house and because he "felt bad for [Sandeen]." Matiaki testified at an evidentiary hearing on the motions to suppress

that both signed documents were false, and that he consented to having a recording device in his car, knew about its placement, and never withdrew his consent.

## II.

Sandeen was indicted for possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). A superseding indictment, issued on March 17, 2021, added a "special allegation" of a previous conviction for second-degree robbery, "a serious violent felony."

Sandeen filed two motions seeking to suppress the evidence seized from Matiaki's vehicle. *See United States v. Sandeen*, No. CR 19-00167, 2021 WL 2460603, at \*3 (D. Haw. June 16, 2021). He also moved to suppress the recording of the "open-mic call," arguing that neither he nor Matiaki consented to it. *See United States v. Sandeen*, No. CR 19-00167, 2021 WL 2828718, at \*1 (D. Haw. July 7, 2021). After an evidentiary hearing, the district court found the officers and Matiaki credible, and denied the suppression motions.

Sandeen then sought information related to the grand jury that returned the superseding indictment. The district court authorized the disclosure of records about "when [the grand jury panel] was sworn in, when it commenced, and the end of the term." These records showed that the grand jury was empaneled on April 4, 2019, and discharged on March 17, 2021, the date of the superseding indictment. The records did not document an extension of the grand jury's presumptive 18-month term, which would otherwise have ended under Federal Rule of Criminal Procedure 6(g) on October 4, 2020.

Sandeen then pleaded guilty in return for the government dropping the special allegation in the superseding indictment, proof of which would have increased his potential sentence. Sandeen's plea agreement reserved the right to appeal the denial of his suppression motions but otherwise waived the right to appeal "his conviction and any sentence within the Guidelines range" and "the manner in which the sentence . . . was determined, on any ground whatsoever." After timely filing a notice of appeal, Sandeen moved for remand "due to a defective indictment." We denied the motion without prejudice to renewing that argument in the opening brief.

## III.

Sandeen argues on appeal that this case should be dismissed because the superseding indictment was returned by an allegedly expired grand jury. Conceding that this argument was not raised below and that he waived his right to appeal his conviction, Sandeen nonetheless contends that we may address the grand jury issue because an appellate waiver does not waive jurisdictional challenges, *see United States v. Ruelas*, 106 F.3d 1416, 1418 (9th Cir. 1997), and *Armored Transport* says the expiration of a grand jury is a jurisdictional defect that "may be raised at any time," 629 F.2d at 1316.

However, *Armored Transport* is "clearly irreconcilable" with a subsequent decision of the Supreme Court. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). In *Cotton*, the Court held that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. at 630. Applying *Cotton*, we have held that "[a]n objection that the indictment does not charge a crime against the United States" is not jurisdictional. *United States v. Draper*, 84

F.4th 797, 801–02 (9th Cir. 2023) (cleaned up). We have also held "that an error in procuring a knowing and voluntary waiver of indictment is non-jurisdictional." *United States v. Medina-Luna*, 98 F.4th 976, 980 (9th Cir. 2024) (cleaned up).

If the absence of a validly-waived indictment is not jurisdictional, then the return of an indictment by an expired grand jury also cannot be. Indeed, the Supreme Court held in *Cotton* that "the grand jury right can be waived." 535 U.S. at 630. And we have expressly rejected, albeit in a non-precedential memorandum disposition, the very argument Sandeen poses today—that the improper extension of a grand jury deprives the trial court of jurisdiction over an indictment. *See United States v. Jimenez-Alvarado*, 322 F. App'x 479, 480–81 (9th Cir. 2009). Today, we make plain that *Cotton* "effectively overruled" *Armored Transport* to the extent the latter characterized the return of an indictment by an expired grand jury as a jurisdictional defect. *See Miller*, 335 F.3d at 899.

Sandeen's plea agreement expressly waived his right to appeal his conviction "on any ground whatsoever" other than the denial of his suppression motions. A "waiver of appellate rights is enforceable if (1) the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016) (cleaned up). Sandeen does not argue that his waiver was unknowing or involuntary. We therefore

dismiss his appeal to the extent it attacks the superseding indictment.[2]

## IV.

Sandeen's attacks on the district court's suppression rulings survive the appeal waiver, but they are unavailing. Sandeen first argues that the district clearly erred in finding Faulkner and Matiaki credible. He asserts that Faulkner could not have suspected a methamphetamine transaction because the first call between Matiaki and Sandeen only referred to "brown stuff," which Faulkner understood to be heroin, and Faulkner (1) failed to mention that "Matiaki was advised not to" leave the Walmart parking lot; (2) evaded questions on cross-examination about why the weight of drugs seized did not match the weight charged in the indictment; (3) gave inconsistent descriptions about the location of Sandeen's cell phone; (4) could not recall Sandeen mentioning his girlfriend; and (5) incorrectly stated in an affidavit that Matiaki had "previously" provided information.

The core of the testimony provided by both Faulkner and Matiaki, however, was consistent with multiple recorded phone calls. During the first call, Sandeen agreed to meet Matiaki and said that they could discuss the "brown stuff" when they saw each other. During the second, Sandeen discussed a "big bindle" and stated he had to "double-check the weight on everything and organize it." During the third, Sandeen said "[t]his is two, it's a little over but it's all, it's not wet." These statements are consistent with Matiaki's

---

[2] Sandeen also claims that the government is judicially estopped from raising any arguments about the grand jury other than the appellate waiver. Because we find the appellate waiver dispositive, we need not address estoppel.

statements to Faulkner that he planned to purchase two pounds of methamphetamine from Sandeen.

Moreover, even if Sandeen has flagged some deficiencies in the witnesses' testimony, they do not leave us with a "definite and firm conviction" that the district court erred in its credibility determinations. *See United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998). The court found each witness credible after considering demeanor, testimony, and experience, and it expressly discussed a "troubling" paragraph in Faulkner's affidavit. Those findings are entitled to "great deference." *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002).

We also reject Sandeen's argument that, even if Faulkner and Matiaki were credible, the district court erred in finding probable cause to stop Matiaki's vehicle and arrest Sandeen. As the district court explained, the agents who stopped Matiaki's vehicle and arrested Sandeen knew of: (1) Matiaki's statement that he planned to purchase two pounds of methamphetamine from Sandeen, (2) two phone calls between Matiaki and Sandeen discussing illegal drugs and arranging to meet at a Walmart parking lot, (3) Sandeen's entry into Matiaki's vehicle, as planned, and (4) Sandeen's statements in Matiaki's vehicle describing the weight and appearance of drugs. These facts "would warrant a person of reasonable caution in the belief that contraband or evidence of" an illegal drug transaction would be found in Matiaki's car. *See Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up). There was thus probable cause to stop the car, arrest Sandeen, and search the car. *See United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) ("Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable

cause to believe that the vehicle contains evidence of a crime.").

Sandeen next argues that the district court erred in failing "to make a finding that [Matiaki's] consent" to the open-mic call "was not coerced." As an initial matter, Sandeen did not raise this argument below; rather, he argued that Matiaki was unaware of the recording device. He has therefore forfeited the argument. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). In any event, the record contains no evidence that Matiaki's consent was illegally coerced. Matiaki never made such a claim, even in the retracted written statements. Nor is coercion established by his testimony that he believed cooperating with law enforcement "would shorten [his] time" or allow him to "see [his] family" sooner. *See United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994) ("[I]n most circumstances, speculation that cooperation will benefit the defendant or even promises to recommend leniency are not sufficiently compelling to overbear a defendant's will.").[3]

## V.

To the extent Sandeen raises arguments about the expiration of the term of the grand jury, this appeal is **DISMISSED**. In all other respects, the judgment of the district court is **AFFIRMED**.

---

[3] *Sandeen* also cites our decision in *United States v. Brandon*, 633 F.2d 773 (9th Cir. 1980), to argue that Matiaki's consent was coerced because there is no evidence Matiaki had the chance to consult with an attorney before agreeing to cooperate. Although *Brandon* found that the cooperation in that case was not coerced in part because the defendant had consulted with an attorney, nothing in that decision suggests that such consultation is always required. *Id.* at 777.