**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Albert TAYLOR, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio NIGO–MARTINEZ and Salvador Jaraba, Defendants–Appellants.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Paul CLEMENIC, Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jerald WILSON, Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jerry ROSENSTEIN and Donald Sanders, Defendants–Appellees.**

Nos. 87–1378, 87–2099, 87–2100 and 87–2021 to 87–2023.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1987.

Decided Feb. 17, 1988.

Rehearing and Rehearing En Banc in No. 87–2023 Denied March 15, 1988.

Jeffrey B. Steinback, Genson, Steinback & Gillespie, Chicago, Ill., for defendant-appellant.

Anton R. Valukas, James R. Ferguson, U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This consolidated appeal, involving six separate criminal cases, requires us to resolve what has become known in the Northern District of Illinois as the "grand jury issue." In February of 1987, the office of the United States Attorney discovered that the records of the clerk's office did not contain a written order extending the Spe-

cial December 1983 Grand Jury beyond its initial 18 month term. Subsequent investigations discovered similar omissions in the records of the Special October 1984 and Special January 1985 Grand Juries.

■ Several defendants indicted by these bodies contend that their indictments are nullities because the putative special grand juries were not properly constituted when they returned these indictments. The government argues that the omission of a written extension order is not error under 18 U.S.C. § 3331,[1] the statute regulating the summoning and term of special grand juries. We hold that the § 3331 extension provision requires only a judicial determination that a special grand jury has not finished its business. The record indicates that this determination was made prior to all but one period of extension of the affected special grand juries; we cannot ascertain on this record whether the Special October 1984 Grand Jury was properly

extended for a second time in October of 1986. Accordingly, we hold that the failure to enter formal written orders of extension was not error, and that the indictments against all of the defendants except Clemenic are therefore valid.

## I.

The six cases before us involve the Special December 1983 Grand Jury (the "1983 Grand Jury") and the Special October 1984 Grand Jury (the "1984 Grand Jury").[2] Chief Judge McGarr ordered the 1983 Grand Jury convened on December 2, 1983. On May 25, 1985, before its original 18 month term expired,[3] the Chief Judge extended the Grand Jury's term pursuant to 18 U.S.C. § 3331. This constituted the first of three such six month extensions authorized by the statute. On November 25, 1985, Chief Judge McGarr again extended the 1983 Grand Jury, this time until June 2, 1986.[4] Prior to the termination of this second extension, the U.S. Attorney

---

1. Section 3331. Summoning and term

   (a) In addition to such other grand juries as shall be called from time to time, each district court which is located in a judicial district containing more than four million inhabitants or in which the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, certifies in writing to the chief judge of the district that in his judgment a special grand jury is necessary because of criminal activity in the district shall order a special grand jury to be summoned at least once in each period of eighteen months unless another special grand jury is then serving. The grand jury shall serve for a term of eighteen months unless an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed. If, at the end of such term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

   (b) If a district court within any judicial circuit fails to extend the term of a special grand jury or enters an order for the discharge of such grand jury before such grand jury determines that it has completed its business, the grand jury, upon the affirmative vote of a majority of its members, may apply to the chief judge of the circuit for an order for the continuance of the term of the grand jury. Upon the making of such an application by

the grand jury, the term thereof shall continue until the entry upon such application by the chief judge of the circuit of an appropriate order. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

2. Although no indictments returned by the Special January 1985 Grand Jury are before us on this appeal, we note that the facts surrounding that Special Grand Jury's extension are nearly identical to those involved in the May, 1986 extension of the Special October 1984 Grand Jury which today we hold valid.

3. The term of a grand jury starts on the date of impanelment, which is the date it is first convened. *See United States v. Armored Transport,* 629 F.2d 1313, 1316–17 (9th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). The 1983 Grand Jury was convened on December 2, 1983. Acting Chief Judge Marshall entered an order on September 10, 1984 calling for a Special October 1984 Grand Jury to be convened. It is not clear from the record, however, on which date in October the 1984 Grand Jury was actually convened. As we discuss below, we must remand for a determination of when the 1984 Grand Jury began its service.

4. On May 25 and November 25, 1985, Judge McGarr entered written orders extending the 1983 Grand Jury "until further notice." These constituted valid extensions under the statute.

never presented, and the Chief Judge never signed, a third formal written order of extension. However, the 1983 Grand Jury continued to meet and return indictments, and was instructed on several occasions by Chief Judge McGarr to "resume deliberations." [5]

Defendants Wilson, Rosenstein and Sanders were each convicted on the basis of indictments returned after the expiration of the 1983 Grand Jury's second six month extension.[6] These defendants contend that the 1983 Grand Jury was not properly extended for the third of its three statutorily authorized extensions. Thus, they allege that its power to return indictments lapsed in June of 1986, thirty months after its impanelment, rather than in December of 1986, a full three years after it was convened.

Defendants Taylor, Nigo–Martinez, Jaraba, and Clemenic were indicted by the 1984 Grand Jury. They contend that this Grand Jury was never validly extended beyond its original 18 month term, and that its power to indict therefore lapsed in April of 1986. The October 1984 Grand Jury was convened pursuant to an order of Acting Chief Judge Marshall.[7] During its first 18 months, the Grand Jury returned indictments against many defendants, including original and superseding indictments against Taylor charging various narcotics-related offenses. In March of 1986, before the expiration of its initial 18 month term, the Grand Jury voted unanimously to continue its work; [8] however, no formal order of extension was ever entered. The 1984 Grand Jury continued to appear weekly before Judge McGarr (and later Judge Grady) until February of 1987, ten months after the end of its initial 18 month term.[9]

After discovering the lack of written orders extending the 1983 and 1984 Grand

---

**5.** The record on appeal indicates that Judge McGarr accepted the 1983 Grand Jury's indictments and told it to resume deliberations on April 28, May 5, May 12, June 2, June 9, and June 16, 1986. The Grand Jury returned indictments against defendants Rosenstein, Sanders and Wilson in the fall of 1986. *See infra* note 6.

**6.** On September 22, 1986, the 1983 Grand Jury returned a superseding indictment against Rosenstein, Sanders and others charging them with conspiracy to steal, dismantle and transport automobiles and parts in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute. Both Rosenstein and Sanders plead guilty in December of 1986, and were sentenced in January of 1987 by Judge Hart to eight years imprisonment plus five years probation. Defendant Wilson was indicted by the 1983 Grand Jury on November 17, 1986 for false statements and obstruction of justice. A jury convicted Wilson on all counts. In March and April of 1987, after the "grand jury issue" surfaced, Wilson, Rosenstein and Sanders each moved to dismiss his indictment and vacate his conviction. Judge Hart granted these motions on May 28, 1987.

**7.** *See supra* note 3.

**8.** No minutes or transcript of such a vote are routinely made by the grand jury. However, on February 24, 1987, the members of the special grand jury were reconvened and asked as a group if they recalled a vote to extend in March 1986. Everyone who had been a member of the special grand jury in March 1986 remembered voting to extend.

*United States v. Smith,* No. 86 CR 272, slip op. at n. 2 (N.D.Ill. May 20, 1987).

**9.** In its final ten months, the 1984 Grand Jury returned sixty indictments against over one hundred defendants. *Smith,* No. 86 CR 272, slip op. at 2. The Grand Jury returned indictments almost every week in April and May, once in June, every week in July and approximately 3 weeks out of every month during the remainder of 1986. *Id.* at 3 & n. 3.

Four of the defendants indicted by the 1984 Grand Jury between April of 1986 and its discharge in February of 1987 have pursued this appeal. The Grand Jury handed down a second superseding indictment against Taylor on August 26, 1986 adding charges of using a tele-.phone to facilitate narcotics offenses. Taylor plead guilty to four counts of his second superseding indictment and was sentenced by Judge Holderman on February 25, 1987 to eight years in jail plus five years probation. Nigo-Martinez and Jaraba were each charged on July 22, 1986 with conspiracy to possess and distribute cocaine. They were each found guilty by a jury, and on June 29, 1987 Judge Marshall denied their motions to vacate the convictions. Clemenic was initially indicted on October 14, 1986. A second superseding indictment, returned January 13, 1987, alleged that Clemenic had engaged in a fraudulent scheme to obtain money from customers of his computer company. He was brought to trial on these charges and convicted by a jury on 11 of 15 counts. Judge Hart vacated his conviction in May of 1987 after the "grand jury issue" surfaced.

Juries, the United States Attorney's office prepared corrective orders which Judge McGarr signed. In the case of the Special December 1983 Grand Jury, Judge McGarr issued an order on February 21, 1987 finding that in May of 1986 he had determined

that the 1983 Grand Jury had not completed its work.[10] In the case of the Special October 1984 Grand Jury, Judge McGarr issued an order on March 3, 1987 finding that in March of 1986 he had determined that the 1984 Grand Jury had not completed its work.[11] In addition to setting forth

**10. ORDER**

On motion of the UNITED STATES OF AMERICA, by ANTON R. VALUKAS, United States Attorney for the Northern District of Illinois, the Court finds as follows:

1. On December 2, 1983, this Court entered an order calling for a special grand jury to be convened under 18 U.S.C. § 3331(a). Pursuant to that order, the Special December 1983 Grand Jury was convened in December 1983.

2. On May 25, 1985, this Court entered an order extending the grand jury's term of service beyond its original term of eighteen months. Under 18 U.S.C. § 3331(a), the effective term of the extension order was for six months.

3. On November 25, 1985, this Court entered an order extending the grand jury's term of service for an additional period of six months.

4. Prior to May 25, 1986, the Special December 1983 Grand Jury voted unanimously to extend its term of service for an additional period of six months. The grand jury informed the clerk of its decision, and instructed the clerk to present a motion for a judicial order of extension.

5. As Chief Judge for the District Court of the Northern District of Illinois, I was familiar with the volume of business being conducted before the Special December 1983 Grand Jury in the period prior to May 1986.

6. In the six months following the grand jury's May 1986 vote to extend its term of service, the Special December 1983 Grand Jury appeared before me on numerous occasions to return indictments and to conduct other business. On all of these occasions, I considered the grand jury to be a properly extended special grand jury, and I treated it as such.

7. I determined prior to May 25, 1986, that the grand jury had additional matters to transact, had not yet completed its business, and should therefore be extended another six months.

8. Based on my dealings with the Special December 1983 Grand Jury, I find that it was my intention in May 1986 to order that the grand jury continue to serve for an additional six months. This conclusion is supported by the fact that between May and December 1986 I considered the grand jury to be a properly extended grand jury, and I treated it as such.

9. The Clerk of the District Court for the Northern District of Illinois has been unable to locate a May 1986 judicial order extending the term of service of the Special December 1983 Grand Jury.

10. It now appears that, through inadvertence or mistake, the Clerk of the Grand Jury may have failed to present a motion to extend

the term of the Special December 1983 Grand Jury beyond May 1986.

11. In view of my contemporaneous determination that the grand jury had not completed its business, and in view of my intention to allow the grand jury to serve for an additional six months, I find that any failure to enter an extension order was non-substantive and ministerial.

12. In order that the record may "speak the truth" and reflect accurately my original intentions and understandings, it is necessary that I enter an order *nunc pro tunc* extending the term of service of the Special December 1983 Grand Jury.

13. THEREFORE, IT IS HEREBY ORDERED that the Special December 1983 Grand Jury be extended from May 25, 1986 to November 25, 1986.

14. Based on the *nunc pro tunc* order of extension entered herein and based on the other findings I have made in this order, I further find and hold that the validity of all the indictments returned by the Special December 1983 Grand Jury during the period May 25, 1986, to November 25, 1986, is not affected by any failure to enter an extension order in May 1986.

/s/ Frank J. McGarr
Feb. 21, 1987

**11. ORDER**

On motion of the UNITED STATES OF AMERICA, by ANTON R. VALUKAS, United States Attorney for the Northern District of Illinois, the Court finds as follows:

1. On September 10, 1984, Acting Chief Judge Prentice Marshall entered an order calling for a special grand jury to be convened under 18 U.S.C. §§ 3331(a) and 3332(b). Pursuant to that order, the Special October 1984 Grand Jury was convened in October 1984.

2. In March 1986, the Special October 1984 Grand Jury voted unanimously to extend its term of service for an additional period of six months. The grand jury informed the deputy clerk of its decision, and instructed the deputy clerk to present a motion for a judicial order of extension. A motion to extend the grand jury was prepared by the United States Attorney's Office.

3. The foreman and other members of the Special October 1984 Grand Jury recall that they appeared before this Court in March 1986, and that at that time this Court extended the grand jury's term of service.

4. The Court recalls that in March 1986 the Special October 1984 Grand Jury appeared be-

Judge McGarr's factual findings, both of these orders purported to amend the records of the respective Grand Juries *nunc pro tunc* to reflect the entry of the extension orders on the proper dates.

## II.

In this appeal, the government first argues that the absence of a formal order extending the Grand Juries was not a defect, because the applicable statute requires only a judicial finding that a special grand jury has not completed its work. Since there is evidence that such a judicial determination was made with respect to both Grand Juries at issue, the government asserts, the indictments and subsequent convictions are valid. Second, even if the absence of a written order is a defect, the government contends that it is a defect in the institution of the proceedings or in the

indictment, and any objection was therefore waived under Federal Rule of Criminal Procedure 12(b) because defendants failed to raise this issue before trial. The government asserts that Federal Rule of Criminal Procedure 12(b) creates a distinction between waivable defects in personal jurisdiction, which protects individuals, and non-waivable defects in subject matter jurisdiction, which restricts the types of cases a court is empowered to hear. The government urges that as long as the indictment charges a federal crime—thereby showing subject matter jurisdiction in the court under Federal Rule of Criminal Procedure 12(b)(2)—it is valid unless the defendant objects to it before trial.[12] Finally, the government asserts that even if defendants could show cause as to why they failed to object prior to trial, any error was harm-

---

fore the Court, and the Court extended the grand jury's term of service.

5. As Chief Judge for the District Court of the Northern District of Illinois, I was familiar in March 1986 with the volume of business being conducted before the Special October 1984 Grand Jury.

6. In the six months following the Court's March 1986 extension of the grand jury's term of service, the Special October 1984 Grand Jury appeared on numerous occasions before this Court to return indictments and to conduct other business. This Court also entered orders substituting grand jurors to allow the grand jury to continue operations. On all of these occasions, the Court considered the grand jury to be a properly extended special grand jury, and the Court treated it as such.

7. The Court determined in March 1986, that the grand jury had additional matters to transact, had not yet completed its business, and should therefore be extended another six months.

8. Based on the Court's dealings with the Special October 1984 Grand Jury, and the Court's own recollections, the Court finds that it intended to, and did in fact order in March 1986 that the Special October 1984 Grand Jury continue to serve for an additional six months. This conclusion is supported by the fact that between March and September 1986 the Court considered the grand jury to be a properly extended grand jury, and it treated the grand jury as such.

9. The Clerk of the District Court for the Northern District of Illinois has been unable to locate a March 1986 judicial order extending the term of service of the Special October 1984 Grand Jury.

10. It now appears that, through inadvertence or mistake, a written extension order was not presented to, or executed by the Court, or that such an order was executed and has since been lost.

11. In view of the Court's contemporaneous determination that the grand jury had not completed its business, and in view of the Court's recollection that it extended the grand jury's term of service, the Court finds that any failure to enter a written extension order was non-substantive and ministerial.

12. In order that the record may "speak the truth" and reflect accurately the Court's original intentions and orders, it is necessary that the Court enter an order *nunc pro tunc* extending the term of service of the Special October 1984 Grand Jury.

13. THEREFORE, IT IS HEREBY ORDERED that the Special October 1984 Grand Jury be extended from March 25, 1986 to September 25, 1986.

14. Based on the *nunc pro tunc* order of extension entered herein and based on the other findings the Court has made in this order, the Court further finds and holds that the validity of all the indictments returned by the Special October 1984 Grand Jury during the period March 25, 1986, to September 25, 1986, is not affected by any failure to enter a written extension order in March 1986.

ENTER

/s/ Frank J. McGarr

DATED: [March 3, 1987]

**12.** *See United States v. Wilson,* 434 F.2d 494 (D.C.Cir.1970); *United States v. Mitchell,* 389 F.Supp. 917 (D.D.C. 1975), *affirmed,* 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

less in light of defendants' subsequent convictions.

The defendants, some of whom are appellants and some of whom are appellees, contend that no special grand jury is properly extended without entry of an order; that even if a judicial determination is sufficient under the statute, none was made here; that the courts below therefore lacked jurisdiction; that any objections therefore could not have been waived; and that harmless error analysis is inapplicable where jurisdiction is lacking.

Because we conclude that 18 U.S.C. § 3331 does not require a written entry to effect the extension of a special grand jury's term, we hold that as to all but one defendant no error has occurred. We therefore do not reach the waiver and harmless error issues.

## III.

The special grand jury is a creature of statute. *United States v. Lang*, 644 F.2d 1232, 1235 (7th Cir.), *cert. denied*, 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). An examination of the language and purpose of 18 U.S.C. § 3331 compels our conclusion that the mere omission to enter a written extension order does not affect the status of an extended special grand jury. The relevant language reads:

> The grand jury shall serve for a term of eighteen months.... If, at the end of such term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury term so extended shall exceed thirty-six months.

. . . . . .

18 U.S.C. § 3331(a). Our approach to interpreting this language cannot be one of "slavish literalism.... We reject a view that would make 'a fortress out of a dictionary,' remembering instead that 'statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.'" *United States v. Rabb*, 680

F.2d 294, 296 (3d Cir.), *cert. denied*, 459 U.S. 873, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982) (*quoting Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945)). We agree with Judge Plunkett's careful analysis in *United States v. Smith*, No. 86 CR 272 (N.D.Ill. May 20, 1987), that to extend a special grand jury the statute requires only that the district court overseeing its activities make a determination that the grand jury has not finished its business. If the court finds that the grand jury still has work to do, the statute itself authorizes the extension. The law thus requires only this judicial determination—not the ministerial act of memorializing it by formal order—to effect the valid extension of a special grand jury.

Our interpretation of the extension provision of § 3331(a) is supported by our reading of the statute as a whole. *See id.*, slip op. at 6–7. Although subject to a degree of judicial supervision, § 3331 allows special grand juries substantial independence in fulfilling their duties. This independence is incompatible with a provision that would allow an inadvertent clerical omission to cripple the grand jury. Both sections of § 3331 reflect the special grand jury's relative autonomy. Under § 3331(a), a special grand jury may not be discharged before it has served 18 months unless the grand jury itself determines that it has finished its business, and the judge then enters an order for its discharge. The judge merely ratifies the grand jury's determination. Under § 3331(b), if the judge fails to wait for the grand jury's determination and tries to discharge it early, or if he fails to extend the grand jury's term when its business remains unfinished, the statute protects against his arbitrary or erroneous action. The grand jury by majority vote can appeal the district judge's action or failure to act to the chief judge of the circuit. Pending the chief judge's order, the grand jury continues to serve. Significantly, although § 3331(b) contemplates the entry of an order in the case of the *discharge* of a grand jury as a final judicial step after the grand jury's own determination has been made, it

mentions no such requirement in the case of an *extension*.[13]

The history and purpose of § 3331 militate against a reading of the statute which would allow the mere failure to enter a formal extension order to prematurely terminate the life of a special grand jury. Our review of the relevant legislative history leads us to adopt Judge Plunkett's analysis in *Smith:*

> The section was enacted as one small part of the Organized Crime Control Act of 1970, and was, like several other of the Act's provisions, designed to provide law enforcement authorities with more effective tools in the fight against organized crime. *See* Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 923 (1970) (Statement of findings of purpose). Title I of the Act, of which § 3331 is a part, was designed to enhance the powers of grand juries investigating organized crime by ensuring that a sufficient number of grand juries would be available to accommodate the needs of the particular district, by permitting the special grand juries to serve for longer periods, and by giving them a greater degree of autonomy from the courts. [*See* 116 Cong.Rec. 35,290, 35,-313, 35,321, 35,328, 35,332, 36,293.] While the House version of § 3331 (the version eventually enacted) amended the Senate version to retain *some* control by the district court over the special grand juries, *see* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 32, *reprinted in* 1970 *U.S.Code Cong. & Admin.News* 4007, 4007, it is evident from the debates in the House that a major concern of the drafters was that grand juries be protected against arbitrary termination of their term of service by district courts.
>
> . . . .
>
> The legislative history plainly indicates that § 3331 was enacted to permit the convening of special grand juries which would have significant independent authority to determine the length of their service without interference from the courts. In light of the protections provided these special grand juries against *intentional* actions taken by the district court to terminate their service before their business had been completed, we conclude that *it would be contrary to the spirit as well as the letter of the statute to hold [indictments] invalid ... because of an inadvertent omission by the district court.* Nothing in the legislative history even hints that any provision of § 3331 was designed to protect the individuals investigated by these special grand juries. *Cf. United States v. Pisani,* 590 F.Supp. 1326, 1339 (S.D.N.Y.1984). In fact, the entire purpose of the statute is to permit the special grand jury sufficient time to complete [its] investigations of complex matters. We can find no evidence whatsoever in the legislative history that Congress was attempting to legislate the validity of indictments in § 3331. *Cf. United States v. Wallace & Tiernan, Inc.,* 349 F.2d 222, 227 (D.C.Cir.1965); *Nolan v. United States,* 163 F.2d 768, 769 (8th Cir.1947), *cert. denied,* 333 U.S. 846 [68 S.Ct. 649, 92 L.Ed. 1130] (1948); *Breese v. United States,* 203 F. 824, 828 (4th Cir.1913).

*Smith,* No. 86 CR 272, slip op. at 7–10 (emphasis added).

Defendants contend that we should follow the decisions of the United States Courts of Appeals for the Ninth and Second Circuits holding that improperly extended grand juries were without power to return indictments. *See United States v. Armored Transport, Inc.,* 629 F.2d 1313, 1316 (9th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Macklin,* 523 F.2d 193, 195 (2d Cir.1975); *United States v. Fein,* 504 F.2d 1170, 1173 (2d Cir.1974). These cases are inapplicable here because we hold that as to all but one defendant, the grand juries *were* properly extended. Moreover, these cases are inapposite, because they examined grand juries convened under Federal Rule of Criminal Procedure 6(b), which

---

**13.** Section 3331(b) reads: "If a district court within any judicial circuit *fails to extend* the term of a special grand jury or *enters an order* *for the discharge* of such grand jury ...." (emphasis added).

provides for 18 month terms. The grand juries at issue were purporting to act beyond the term authorized by law and their acts were therefore nullities. Here, by contrast, each of the special grand juries was impaneled pursuant to § 3331, which authorizes a 36 month term.[14] All of the indictments before us were returned within this time period.

■ It would have been preferable for the Chief Judge to enter an order at the time of these special grand juries' extensions evidencing his determination that they had not completed their work. *See United States v. Marrapese,* 610 F.Supp. 991, 1010 n. 6 (D.R.I. 1985). A written order is the best evidence of a judicial act. But in the absence of a statutory provision requiring the entry of a written order, the judicial determination alone stands as the operative act of the court. Courts accomplish much of their business without formal memorialization. Moreover, the common law distinguishes between the rendition and the entry of judgment. *See People v. Redman,* 122 Ill.App.3d 787, 462 N.E.2d 21, 24, 78 Ill.Dec. 305, 308 (1984); Freeman on Judgments §§ 46–49 (1925). *Cf. Speaks v. Brierley,* 417 F.2d 597 (3d Cir.1969), *cert. denied,* 397 U.S. 1051, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970) (policy in favor of maintaining the integrity of written record against subsequent oral inquiry into its meaning); Wigmore on Evidence § 2450 (integration of judicial records compulsory). It is the rendition of judgment that is determinative; entry of a notation is merely ministerial. The judicial act of determining whether a special grand jury has completed its work is separate from and prefatory to the ministerial act which reflects it. "That which the court performs judicially ... is

not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity." Freeman on Judgments § 46. Where a supervising judge has failed to enter a written extension order under § 3331, other reliable and unequivocal evidence that he or she actually made the determination in question may suffice.[15] We therefore proceed to examine the sufficiency of this evidence.

### IV.

■ On February 21, 1987 Chief Judge McGarr signed an order which contained findings of fact and purported to extend the term of the 1983 Grand Jury *nunc pro tunc.* A court may issue a *nunc pro tunc* order to correct the record so that it reflects what was actually done but never recorded due to clerical inadvertence. *See Recile v. Ward,* 496 F.2d 675, 680, *modified on other grounds,* 503 F.2d 1374 (5th Cir.1974); *Matthies v. Railroad Retirement Board,* 341 F.2d 243, 246–48 (8th Cir.1965). "The office of a *nunc pro tunc* ('now for then') order is to clean up the records by showing what was previously done with effect from the time done; it is not to alter substantive rights." *King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1187 (7th Cir.1987). No formal order was ever entered extending the term of the 1983 Grand Jury; thus the record may not be altered after the fact to show the entry of such an order. Yet, as we have already held, the entry of a formal order was not necessary. We therefore examine Judge McGarr's order solely to determine whether it contains evidence that he made the requisite determination in May of 1986.

■ Paragraph seven of Judge McGarr's order reads: "I determined prior to May

---

14. As previously discussed, Congress significantly extended the term of the new special grand juries to increase their investigative capabilities. *See United States v. Lang,* 644 F.2d 1232, 1234 (7th Cir.), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). It was clear throughout the congressional debates that these grand juries would serve longer than 18 months. *See, e.g.,* 116 Cong.Rec. 35,311, 35,313, 35,321, 35,328, and 35,332.

15. "[W]hile entry is not judgment, its absence tends strongly to indicate that no judgment ex-

ists...." Freeman on Judgments § 49. However, unequivocal evidence that the requisite decision was made may be strong enough to overcome the presumption that the absence of an explicit notation from the court record is dispositive. *See United States v. Stofsky,* 527 F.2d 237, 247–48 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *Wax v. Motley,* 510 F.2d 318, 321 (2d Cir.1975); *Marrapese,* 610 F.Supp. at 1010; *Ramsey v. Hand,* 185 Kan. 350, 343 P.2d 225, 233, *cert. denied,* 362 U.S. 970, 80 S.Ct. 956, 4 L.Ed.2d 901 (1960).

25, 1986, that the grand jury had additional matters to transact, had not yet completed its business, and should therefore be extended another six months." Judge McGarr's finding is corroborated by the fact that he ordered the 1983 Grand Jury to "resume deliberations" on several occasions in April and May of 1986 and treated it as properly extended. Defendants point out that an assistant U.S. Attorney made a conscious decision not to seek another extension order for the 1983 Grand Jury because he erroneously believed that the previous order, which purported to extend the Grand Jury "until further order of the court," was sufficient. The fact that the U.S. Attorney's office never sought an extension, however, does not contradict Judge McGarr's finding that he was familiar with the work of the Grand Jury and made the requisite determination prior to May 25, 1986.

Judge McGarr made similar findings with regard to the 1984 Grand Jury. Paragraph seven of his March 3, 1987 order states that he "determined in March 1986, that the grand jury had additional matters to transact, had not yet completed its business, and should therefore be extended another six months." Judge McGarr's finding is corroborated by the fact that the 1984 Grand Jury voted in March to continue its work. *See supra* note 8. This evidence suffices to show that the 1984 Grand Jury was properly extended for six months beyond its original term.[16]

■ Judge McGarr's order therefore indicates that the 1984 Grand Jury was validly extended until October of 1986. The 1984 Grand Jury, however, continued to sit until February of 1987—four months beyond its initial extension. The record before us does not reflect whether a judicial determination was made, prior to the expiration of the 1984 Grand Jury's first extension, that it had unfinished business. Further, it is not clear from the record on which date in October, 1984 the 1984 Grand Jury was impaneled. The Grand Jury in-

dicted Clemenic on October 14, 1986, returned a superseding indictment against him on January 6, 1987, and a second superseding indictment on January 13, 1987. We therefore remand Clemenic's case to the district court for a determination of whether his original indictment was returned less than 24 months after the October 1984 impanelment date; and whether there is any evidence that a judicial determination was made prior to the expiration of its first extension that the 1984 Grand Jury had not finished its business.

### V.

In summary, we hold that the Special December 1983 Grand Jury was validly extended until December 2, 1986 and the Special October 1984 Grand Jury was validly extended until 24 months from the date of its impanelment. The Grand Juries were thus properly constituted when they returned indictments against defendants Taylor, Nigo–Martinez, Jaraba, Wilson, Rosenstein and Sanders, and these defendants' convictions are not on this account invalid. We remand for a determination of whether, consistent with this opinion, any of Clemenic's indictments were valid.

---

16. The fact that the 1984 Grand Jury did not appear before Judge McGarr from March 18 until April 1, 1986, *Smith*, No. 86 CR 272, slip op. at 3, does not contradict Judge McGarr's finding that he determined in March of 1986 that the Grand Jury had not finished its business. Any district court findings that Judge McGarr did not make the requisite determination are clearly erroneous.