**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan RIVERA and Reynaldo De Lafe,
Defendants–Appellants.**

Nos. 87–1374, 87–2074.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1988.
Decided Aug. 22, 1988.

Martin S. Argan, Edward B. Miller, Agran & Agran Ltd., Chicago, Ill., for defendants-appellants.

Therese Cesar–Garza, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Defendants-appellants Rivera and De Lafe appeal from their jury convictions for various narcotics offenses. Both Rivera and De Lafe challenge the validity of the indictments under which they were prosecuted. Rivera contends separately that the government failed to prove that he possessed the requisite criminal intent to commit the offenses with which he was charged. Finally, De Lafe contests the sufficiency of the evidence adduced against him at trial. We affirm.

I.

On July 9, 1986, FBI Agent Lett and a confidential informant ("CI") met defendant Rivera, whom the CI knew to be a narcotics dealer, at a Jewel supermarket. After a brief introduction, Lett and the CI followed Rivera to his home on Sheffield Avenue in Chicago, where Rivera informed Lett that if he wanted cocaine he would have to follow Rivera to yet another location. Rivera, Lett and the CI then proceeded to an apartment at 1310 West Winona Street. Rivera entered the building alone but quickly reappeared and reported to Lett that his supplier wasn't at home but that he, Rivera, knew of another source of "good coke." Once again, Rivera instructed Lett and the CI to follow him, this time to the intersection of Byron and Ashland.

Rivera continued by himself north on Ashland, only to return several minutes later unable to find his second supplier. It was agreed at this point that Lett, Rivera and the CI would stop for something to eat and return later to the West Winona Street address.

At lunch, Rivera told Lett that he had made a lot of money selling cocaine and had received few complaints from his customers. He assured Lett that if he became a steady customer the price of the cocaine he purchased would go down. After lunch, the three men returned to 1310 West Winona, where Rivera once again entered alone. Moments later, Rivera re-emerged and told Lett he had to go pick up "his man." A surveillance team followed Rivera to a tavern owned and operated by defendant De Lafe, where Rivera picked up an individual named Manuel Montero. Montero and Rivera returned to Montero's home on Winona, where Lett awaited their arrival. Lett then gave Rivera $2600, which Rivera turned over to Montero in return for a brown paper bag filled with what was later ascertained to be two ounces of cocaine. Rivera assured Lett that he had watched Montero weigh the cocaine and gave Lett his phone number in case Lett wished to purchase more cocaine.

On July 17, Lett contacted Rivera to set up another purchase. This time, Lett expressed an interest in acquiring 4 or 5 ounces of cocaine; once again Rivera told Lett that he would get the drugs from a friend. Shortly after this conversation, law enforcement agents observed Rivera go to a bank, where he reportedly withdrew money from a safe deposit box before returning to his apartment. Lett telephoned Rivera to check on the progress of the transaction and Rivera informed him, "I got my money ready ... I waiting for my buddy." Lett, apparently anxious to consummate the deal, phoned Rivera a third time. Rivera reported that he had contacted "my people, he got three [ounces]." Lett agreed to buy the cocaine and Rivera responded, "let me go get it and call me in twenty minutes for real."

Next, Rivera was observed driving to defendant De Lafe's tavern, where he had previously met Manual Montero. Rivera then promptly left the tavern and returned home in time to receive the pre-arranged phone call from Lett. Rivera told Lett that he, Rivera, would pay for the drugs and that Lett could reimburse him. He instructed Lett to meet him at a Jewel supermarket where the only people there would be "me [Rivera], you and my wife." Rivera was then seen leaving his home accompanied by a woman (presumably his wife) and driving to a Jewel on north Clark Street. In the Jewel parking lot, the woman got out of Rivera's car and met with defendant De Lafe. De Lafe handed her a beige plastic bag which she then placed in Rivera's car. Rivera and the woman then proceeded to another Jewel, where she entered the supermarket carrying what appeared to surveillance officers to be the same beige plastic bag De Lafe had given her. Rivera left the parking lot but returned about four minutes later, at which time he met Lett.

After a brief discussion with Lett, Rivera walked into the Jewel and enlisted the aid of two neighborhood children, Edwin and Edgar Castenada, to help him deliver the cocaine to Lett. Rivera asked Edgar to watch the beige plastic bag, which by this time was situated in a shopping cart. Meanwhile, Rivera and Edwin went back to talk to Lett in the parking lot. After several minutes, Rivera told Edwin to go inside and get his brother. When the boys returned Rivera removed the beige plastic bag from the waistband of Edgar's pants. He handed the bag to Lett, who inspected its contents and discovered four smaller bags containing a white powder he believed to be cocaine. Lett got out of his car, gave back-up officers a pre-determined signal and arrested Rivera and the Castenada boys.

On August 8, 1986, the Special January 1985 Grand Jury returned a four-count indictment against Rivera and several other individuals. On November 20, 1986, the same grand jury returned a superseding indictment, which added a fifth count and included charges against De Lafe. A mo-

tion to sever De Lafe's trial was granted and on December 15, 1986 the trial of Rivera and the others charged in the original indictment commenced. On December 23, the jury found Rivera guilty of one count of conspiring to distribute and possess cocaine with intent to distribute (21 U.S.C. § 846) and of two counts of distributing cocaine (21 U.S.C. § 841(a)(1)). Similarly, on February 17, 1987, a jury found De Lafe guilty of one count of conspiring to distribute and possess cocaine with intent to distribute and one count of distribution of cocaine. Rivera was sentenced to 18 months in prison and a special parole term of 5 years on one of the distribution counts; he received 5 years probation on both the remaining distribution count and the conspiracy count, the terms of probation to run concurrently with each other and with the special parole term. De Lafe received a sentence of 18 months incarceration on the distribution count and 5 years probation on the conspiracy count.

Rivera and De Lafe timely appealed and we consolidated their appeals. Each challenges the validity of the indictment pursuant to which he was brought to trial. Rivera further alleges that, while he admittedly was involved in the narcotics transactions at issue, his limited participation as a go-between was procured only as the result of having been entrapped by government agents. De Lafe, on the other hand, contends that the government produced insufficient evidence at trial to support his convictions.

## II.

■ This circuit's recent opinion in *United States v. Taylor*, 841 F.2d 1300 (7th Cir.1988), conclusively resolves the issue of the validity of the indictments pursuant to which Rivera and De Lafe were prosecuted. At issue in *Taylor* was whether the failure to enter a written order explicitly extending the term of a Special Grand Jury (convened pursuant to 18 U.S.C. § 3331) had any effect upon indictments handed up by the grand jury after the expiration of its initial eighteen-month statutory term. We concluded that a formal order extending a

§ 3331 grand jury's initial eighteen-month term was not necessary for the panel to continue its deliberations; instead, we held that so long as the district court determined, at the end of the panel's eighteen-month term, that the grand jury had not concluded its · business, the term of the grand jury could be lawfully extended. *Taylor*, a case involving contested extensions of the Special December 1983 and October 1984 Grand Juries, held that the *nunc pro tunc* orders entered by Chief Judge McGarr in a belated attempt to extend the terms of the Special Grand Juries contained sufficient evidence that the requisite factual determination had, in fact, been made that the grand juries at issue had not completed their deliberations. Because we found in *Taylor* that such determinations were all that was necessary to extend for six months the initial eighteen-month term of a § 3331 grand jury, we upheld the indictments returned by the Special Grand Juries within their properly extended terms.[1]

The record in the instant case contains precisely the sort of evidence we relied upon in *Taylor* to find that the grand juries at issue there had been properly extended. Not only does Chief Judge McGarr's *nunc pro tunc* order purporting to extend the original term of the grand jury that indicted Rivera and De Lafe include sufficient evidence that the panel's business was unfinished, but we noted in *Taylor* that the facts surrounding the first extension of the grand jury at issue here were "nearly identical" to the facts involved in the extensions upheld in *Taylor*. Consequently, the indictments by which defendants Rivera and De Lafe were charged, while returned *after* the original eighteen-month term of the Special January 1985 Grand Jury, were nevertheless within a lawful six-month extension of that panel's term. *See* 18 U.S.C. § 3331.

■ Defendant Rivera next contends that the government failed to establish at trial that he was predisposed to commit the crimes with which he was charged. Rivera's entrapment defense is based upon his assertion that government agents unrelentingly pressed him to enter into drug transactions as a means of fulfilling his long-standing dream of getting into the used car business. A careful review of the trial transcripts suggests quite the contrary; the prosecution adduced more than adequate evidence of Rivera's predisposition to justify the jury's rejection of the proffered entrapment defense.

■ In order to raise the affirmative defense of entrapment, the defendant must produce evidence of both the government's inducement and his own lack of predisposition. *United States v. Hawkins*, 823 F.2d 1020, 1024 (7th Cir.1987); *United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir. 1985). Only if the defendant can sustain this burden of production does the burden shift to the government to prove beyond a reasonable doubt that the defendant was predisposed or that there was no government inducement. *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984). In the instant case, although Rivera testified that he never personally agreed to sell drugs to Agent Lett and that his participation in the transactions was only the result of repeated government overtures, the government presented sufficient contradictory evidence to permit the jury reasonably to conclude that Rivera had, in fact, been predisposed. Rivera maintains that even viewing the evidence in the light most favorable to the government, as we must when examining a criminal conviction, the government failed to satisfy the several factors we have previously suggested are relevant to assessing predisposition. *See United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir.1983). As we have noted repeatedly, however, no one of the *Ka-*

---

1. In the case of several of the indictments at issue in *Taylor* that were handed up by the Special October 1984 Grand Jury between October 1986 and February 1987, however, the record was unclear as to whether the necessary factual determination had been made. As a result, we remanded the case of one of the appellants to ascertain whether his indictment (returned *after* the October 1984 grand jury's first lawful extension) was also valid—*i.e.*, preceded by a factual determination authorizing a second, six-month extension.

*minski* factors, when considered in isolation, is determinative; indeed, the single most important factor in this inquiry is whether the defendant "evidenced a reluctance to engage in the criminal activity that was overcome only by repeated government inducement." *Perez–Leon*, 757 F.2d at 871. *See also Hawkins*, 823 F.2d at 1025.

At trial, the government produced ample evidence not only that Rivera was knowledgeable concerning cocaine trafficking but also that he had, in the past, made a good deal of money selling cocaine. Along these lines, Agent Lett testified that 1) Rivera bragged to him about having numerous satisfied customers, 2) Rivera assured Lett that the purchase price for cocaine would go down as Lett's purchases grew, and 3) Rivera furnished Lett with his telephone number in case he desired to purchase more cocaine. Moreover, the government's confidential informant also testified that he personally had bought cocaine from Rivera on several occasions in 1983. On appeal, we are bound to affirm Rivera's conviction if any rational trier of fact could have found the requisite predisposition beyond a reasonable doubt, *Perez–Leon*, 757 F.2d at 871. A rational jury could certainly choose in these circumstances to credit the government's evidence as sufficient to negate Rivera's claimed lack of predisposition.

Finally, defendant De Lafe argues that the evidence presented against him at trial was insufficient to establish his guilt on the distribution and conspiracy charges. De Lafe maintains that there is no evidence to establish conclusively that the bag he handed Rivera's female companion contained cocaine, or that the bag containing cocaine that Rivera ultimately gave to Lett was the same one De Lafe tendered to Rivera's accomplice. Furthermore, De Lafe asserts that some unidentified person could have easily switched the bag or placed cocaine in it either in Rivera's car or while it lay unattended in the Jewel. The absence of any conclusive physical or testimonial evidence linking him to the seized cocaine should, according to De Lafe, result in a reversal of his conviction on the two counts of distributing cocaine. With respect to his conviction for conspiracy, De Lafe asserts that evidence that he met with Rivera at his tavern the very day of the arrest and that De Lafe was later seen handing Rivera's associate a plastic bag is insufficient as a matter of law to support a conviction for conspiracy to possess and to distribute cocaine.

■ A criminal defendant bears a heavy burden when attacking the sufficiency of the evidence used to convict him at trial. *United States v. Peters*, 791 F.2d 1270, 1290 (7th Cir.1986). The proper standard of review is whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found that the defendant committed the crimes with which he was charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *United States v. Whaley*, 830 F.2d 1469, 1472 (7th Cir.1987). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Whaley*, 830 F.2d at 1473 (quoting *United States v. Moore*, 764 F.2d 476, 478 (7th Cir.1985)). In applying these standards, a reviewing court must defer to the jury's weighing of the evidence and drawing of reasonable inferences. *Whaley*, 830 F.2d at 1472.

■ It is well-settled in this circuit that "participation in a criminal conspiracy may be shown through circumstantial evidence." *See e.g., United States v. Mealy*, 851 F.2d 890, 896 (7th Cir. July 1, 1988); *United States v. Zambrana*, 841 F.2d 1320, 1346 (7th Cir.1988); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collection of circumstances.'") The evidence in this case showed that Rivera went to meet De Lafe at his tavern *immediately* after telling Agent Lett that he was on his way to meet "his people", from whom he intended to procure cocaine for Lett.

Then, just before Rivera gave Lett the cocaine, De Lafe was seen meeting with Rivera and handing Rivera's female associate a beige plastic bag. Ultimately, a plastic bag very similar to the one De Lafe gave the woman was found, upon inspection by Lett, to contain cocaine. On the strength of this evidence, we are satisfied that the government's circumstantial case against De Lafe for conspiracy was sufficient to support his conviction. A rational trier of fact could surely conclude that De Lafe's involvement with Rivera, occurring as it did at critical junctures in the chain of events leading up to the Lett transaction, was part of a criminal conspiracy and not mere coincidence or happenstance.

De Lafe's conviction for distribution of cocaine should be affirmed for similar reasons. While it is undeniably true that De Lafe was never actually shown to have been in possession of or to have furnished Rivera with cocaine, the circumstantial evidence presented by the government at trial was nevertheless sufficient to support a reasonable inference of De Lafe's guilt beyond a reasonable doubt on the distribution charge. In denying De Lafe's motion for acquittal, the district court judge aptly characterized the government's case against De Lafe:

> My function here is to ask, could twelve reasonable people find beyond a reasonable doubt, and I believe that they could. And that the verdict would be sustainable.
>
> I think there are other circumstances. First, some of the last testimony given by Mr. Lett. Rivera is in search of some cocaine on the 16th and can't find it.
>
> Then on the 17th, he goes to De Lafe's place of business, leaves there, goes to his apartment or home or whatever it is, picks up the woman, goes to the Jewel, and he meets De Lafe. By he, I mean Rivera and the woman. The woman meets De Lafe.
>
> De Lafe delivered a package to the woman. They go to the next stop where they are going to meet Lett, and they go through this business about—with the kids....

> The government's theory is that—the circumstantial theory is the woman delivered the cocaine....
>
> But when everybody congregates around Lett's car, ultimately Rivera knows where the cocaine is. And he reaches in and takes it out. Maybe he put it here. Maybe he had it put there.
>
> And then the package appears to be the same. Sure, there are lots of bags like that floating around. The jury knows that. We all know that. I mean, that's reasonable argument.
>
> But the fact is that on this day in question, De Lafe is met, he delivers a package to the woman, the government's proof is the woman is seen going into the store with what appears to be the same package.
>
> The youngster comes out of the store, he's got the package on his person. Rivera knows where it is, takes it out and it's the same kind of package.
>
> I think the circumstantial chain is sufficient. It's close, it's a close case, but I think it's sufficient.

Admittedly, the government's case against De Lafe could be stronger, but on review, this court's function is only to assess whether any rational jury could have been convinced by the evidence presented that De Lafe was guilty beyond a reasonable doubt of distribution of cocaine. In De Lafe's case, we have been presented with nothing that would incline us to disturb the jury's verdict.

### III.

On the basis of this court's prior decision in *Taylor*, we uphold the validity of De Lafe and Rivera's indictments. Furthermore, because Rivera failed to produce sufficient evidence to support the claim that he lacked predisposition, his entrapment argument is rejected. Finally, De Lafe's insufficiency of the evidence arguments must also be rejected inasmuch as the government's circumstantial evidence was adequate to permit a jury to infer guilt beyond a reasonable doubt.